## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| JAMES BUECHLER and JESSE MARTINEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>RUMBLE INC.,<br><br>　　　　　　　　Defendant. | Case No. 8:22-cv-02237-SDM-AAS |

## DEFENDANT RUMBLE INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant Rumble Inc. ("Rumble"), pursuant to Federal Rule of Civil Procedure 12(b)(6), Local Rule 3.01, and the doctrine of *forum non conveniens*, hereby moves to dismiss the Class Action Complaint (the "Complaint"), Dkt. No. 1, filed by Plaintiffs James Buechler and Jesse Martinez (together, "Plaintiffs").

### Preliminary Statement

Plaintiffs have sued Rumble Inc.—a U.S. holding company that indirectly owns Rumble Canada Inc., the Canadian entity operating the Rumble platform—for a supposed violation of the Video Privacy Protection Act (the "VPPA"). The VPPA was passed in 1988 after a reporter obtained and published a list of Judge Robert Bork's video rental records during his Supreme Court confirmation process. This suit focuses on Rumble's use of a Facebook tool, the Pixel, to advertise to Rumble users on Facebook. In so doing, Plaintiffs contend, Rumble

violated the VPPA by allegedly "disclosing" their "personally identifiable information" to Facebook.

Rumble, however, is not a video store—it is an online platform offering a wide array of video content. Unlike Judge Bork's video store, moreover, Rumble is not alleged to have disclosed information identifying that Plaintiffs viewed specific videos. To the extent there was any disclosure of personally identifiable information ("PII"), it was *Plaintiffs themselves*, not Rumble, who made the disclosure. As Plaintiffs acknowledge, when they accessed Rumble, *Plaintiffs'* browsers sent Facebook their Facebook IDs, by way of Facebook cookies Plaintiffs had previously agreed to let Facebook place on their devices. Rumble is *never* alleged to have had, let alone transmitted, Plaintiffs' Facebook IDs. Obviously, Rumble cannot "disclose" something it never had. Moreover, Plaintiffs do not allege that a single human being anywhere in the world ever learned of *a single video* that they or any absent class member watched on Rumble. Plaintiffs' attempt to invoke the VPPA here is much like trying to shove a Betamax cassette into the USB port of a shiny new MacBook Pro.

The Complaint here is woefully deficient for several reasons and should be dismissed. At the threshold, without regard to the merits, this suit should be dismissed because Plaintiffs agreed in a binding forum selection clause to bring this lawsuit in Canada. The Complaint pertains exclusively to Plaintiffs' use of "Rumble's website" and "mobile application," from which flowed the purported disclosure of their "personally identifiable information . . . to third-party

Facebook, Inc." Compl. ¶¶ 1, 4, 16. Rumble.com's Terms and Conditions contain a forum selection clause—to which Plaintiffs agreed but which they tellingly omit from their Complaint—mandating that any claims "arising out of or relating to" the Terms of Use or the use of "the Rumble Services" must be brought in Ontario, Canada. The Supreme Court and the Eleventh Circuit routinely enforce forum selection clauses and have made clear that such agreements should not be invalidated absent "extraordinary circumstances." There is nothing extraordinary about the agreement Plaintiffs made with Rumble here. This suit must proceed, if at all, in Canada. *See* Part I.

Even setting that aside, Plaintiffs have failed to state a claim for violation of the VPPA for at least four reasons. *First*, as noted, Plaintiffs have not pled that *Rumble* disclosed any PII; rather, to the extent there was disclosure, Plaintiffs did it themselves. *See* Part II.A.

*Second*, there are zero well-pled allegations that *Plaintiffs*' PII was ever "disclosed" to a third party—either by Rumble or otherwise. In a thirty-page complaint, there is but a singular sentence-long allegation made "[o]n information and belief" that Defendant disclosed certain information about Plaintiffs to Facebook. Under *Twombly* and its progeny, the Court should ignore such a threadbare allegation. And while Plaintiffs purport to bring a class action, it is well settled that what did or did not happen to absent class members is irrelevant at the pleading stage. *See* Part II.B.

3

*Third*, the Complaint fails to plead that Rumble acted "knowingly," as is required by the VPPA.  In fact, although Plaintiffs argue that certain Facebook IDs of Rumble users were disclosed to Facebook, they fail to plead that Rumble ever knew a single user's Facebook ID.  As is obvious, Rumble necessarily could not have "knowingly" disclosed information it did not itself know.  *See* Part II.C.

*Fourth*, Plaintiffs do not allege whether they watched live or prerecorded videos on Rumble's website—a crucial distinction because the statute applies only to companies providing *prerecorded* videos.  *See* Part II.D.

### Factual Background[1]

### A. Plaintiffs Subscribe to Rumble and Agree to Litigate in Ontario, Canada.

Rumble is an online video platform that provides its users with a wide array of live and on-demand video content in the areas of news, sports, finance, entertainment, music, and cooking.  Compl. ¶ 2.  The two named Plaintiffs in this putative class action are residents of Maryland and New Mexico.  *Id.* ¶¶ 11, 13.  They allege that they had Rumble subscriptions "and used a laptop, desktop computer, and smart phone to access streaming video content on that service."  *Id.* ¶¶ 12, 14.  Although each named Plaintiff alleges that he "has had a Facebook

---

[1] The facts recited are drawn from the Complaint, sources relied on therein, and documents subject to judicial notice.  Allegations are accepted as true only for purposes of this motion.  *See Ellison v. Postmaster General*, 2022 WL 4726121, at *6 (11th Cir. Oct. 3, 2022) (on motion to dismiss, court may "take judicial notice of relevant public documents" and may consider documents incorporated into the complaint by reference).  For case citations throughout this memorandum, all internal quotation marks and citations are omitted except where the original source is identified.  All emphases to quoted material in this memorandum have been added except where otherwise indicated.  All references to exhibits throughout this memorandum refer to exhibits to the Declaration of Michael Ellis.

account," the Complaint does *not* allege that either plaintiff ever logged on to his Facebook account (i) after subscribing to Rumble, or (ii) on the same device(s) he used to access Rumble.  *Id.* ¶¶ 12, 14.  Plaintiffs also do not allege when they accessed streaming video content on Rumble, and they do not allege whether the content they accessed was live or prerecorded.

During the relevant time period, upon signing up for a Rumble account, users were required to affirmatively agree with and consent to Rumble's Website Terms and Conditions of Use and Agency Agreement (the "Terms and Conditions").  Compl. ¶ 77.  A link to the Terms and Conditions was displayed near the "Register" button (Ellis Dec. ¶ 16):



During the relevant time period, the Terms and Conditions included a choice of law and forum selection provision that provided as follows (Ex. 4):

> These Terms of Use and the Agency Agreement, shall be governed by and construed in accordance with the laws of the Province of Ontario or, at Rumble's discretion, the federal laws of the United States, excluding its conflicts of law rules. **You expressly agree that the exclusive jurisdiction for any claim or action arising out of or relating to these Terms of Use, the Agency Agreement, or your use of the Rumble Services, shall lie only in the Ontario Superior Court of Justice at Toronto**, or at Rumble's discretion, in the United States Federal District Court for the judicial district in which your address is located, or if your address is outside of the United States, for any judicial district in the United States, **and you further agree to and submit to the exercise of personal jurisdiction of such courts for the purpose of litigating any such claim or action.**

## B. Rumble Uses the Pixel to Enhance Users' Experience.

This lawsuit arises out of Rumble's use of the so-called Facebook "Pixel" for purposes of advertising to individuals who knowingly use both Rumble and Facebook.  The Pixel is a file on Facebook's servers.  The code to access the Pixel is placed into the code on Rumble's website.  Compl. ¶ 59.  The Pixel can use a "cookie" placed on the user's device *by Facebook*, if a Rumble.com visitor previously gave Facebook consent to use cookies and has "cookies" turned on.  The Pixel can help companies use Facebook ads to "'reach a more relevant audience, provide a more personalized ad experience and optimize [their] ad campaigns.'"  *Id.* ¶ 60 (quoting Facebook).

Plaintiffs contend that the Pixel code, using a Facebook cookie, can transmit to Facebook: (i) the URL for a video that a user has viewed on Rumble's platform, and (ii) the user's Facebook ID, which is a numerical code.  *Id.* ¶¶ 68, 69.  According to Plaintiffs, this allows Rumble to serve users "with targeted advertisements on Facebook and otherwise facilitates Rumble's use of Facebook's advertising services."  *Id.* ¶ 5.  As an example, when a Rumble user is browsing Facebook, the Pixel can relay to that user on Facebook what items he has viewed on Rumble.  *Id.* ¶ 52.  Plaintiffs do not contend that the Pixel displays one Rumble user's video viewing history to another Rumble user—or to anyone else other than the same user who viewed the videos.  Thus, Plaintiffs do not contend that a single human being viewed their Facebook ID or connected their Facebook ID with URLs for videos they watched on Rumble.

As relevant here, when a user accesses Rumble and his browser in turn accesses the Pixel on Facebook's servers, the user's browser sends Facebook a Facebook ID that is found in a "c_user cookie" that Facebook—*not* Rumble— previously installed on the user's device when the user was logged into Facebook on that device. *Id.* ¶¶ 59, 67, 69. Critically, nowhere in the Complaint do Plaintiffs contend that Rumble itself ever had access to its users' Facebook IDs. Thus, the Complaint never alleges that *Rumble* possesses or knows its users' Facebook IDs, or that Rumble sends those Facebook IDs to anyone. *See In re: Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1093–94 n.3 (N.D. Cal. 2015) ("The only servers that can access a particular cookie are those associated with the domain that wrote the cookie. In other words, Hulu can read only *hulu.com* cookies, while Facebook can read only *facebook.com* cookies; the companies cannot read or write to cookies associated with the other service."). Nor does the Complaint plead that the Pixel transmits Facebook IDs for users who have (i) actively logged out of Facebook, (ii) turned off cookies, (iii) deleted existing cookies, or (iv) used Facebook on a separate device than that used for Rumble.

Plaintiffs do not allege that any single human being anywhere in the world—aside from Plaintiffs themselves—ever learned of any video that anyone watched on Rumble due to the Pixel. Nor do Plaintiffs allege any details about the supposed disclosure by Rumble of their PII to Facebook. Compl. ¶ 86. Furthermore, Plaintiffs do not allege that they *ever* viewed a video on Rumble on a device that had a cookie holding their Facebook IDs.

## Argument

The Complaint should be dismissed for any one of multiple independent reasons. *First* and foremost, Rumble's Terms and Conditions contain a forum selection clause in which Plaintiffs agreed to litigate disputes such as this one in Canada. *See* Part I. And *second*, Plaintiffs have failed to state a claim under the VPPA for no fewer than four reasons. *See* Part II.

### I.   This Case Should Be Dismissed in Light of the Parties' Agreement to Litigate in Ontario, Canada.

This case is subject to dismissal for *forum non conveniens* because Plaintiffs agreed in a binding forum selection clause to bring this suit in Canada.

As an initial matter, it bears noting that Plaintiffs have sued the wrong entity—they sued the U.S. holding company Rumble Inc. instead of Rumble Canada Inc., the Canadian entity that operates the platform described in the Complaint. Plaintiffs' error would appear to arise from the fact that Rumble Canada Inc. was previously known as Rumble Inc. before September 2022, when Rumble became a public company after a merger resulting in a corporate reshuffle. Comp. ¶ 18. Rumble became publicly traded following a merger between (i) a publicly traded special purpose acquisition company ("SPAC") called CF Acquisition Corp. VI and (ii) the Canadian company that at the time was named "Rumble Inc." *Id.*

After the transaction closed, the publicly traded SPAC changed its name to Rumble Inc., while the Canadian entity formerly known as Rumble Inc. was re-named Rumble Canada Inc. ("Rumble Canada"). Ex. 1 at 14 (Quarterly

Statement); Ex. 2 at 5 (Registration Statement); Ex. 3 at 2 (Schedule 13D).[2] Rumble Inc., the named defendant, is a U.S.-based holding company that indirectly owns Rumble Canada Inc., a Canadian company with its principal place of business in Ontario, Canada.  Thus, at all relevant times, Rumble Canada (not the named defendant) operated the Rumble online platform.  Ellis Dec. ¶ 13.[3]

It thus comes as no surprise that Rumble sought to limit the fora in which suits such as this could be brought to Canada.  There is no dispute about the forum selection clause at issue.  In signing up to use Rumble's services, Plaintiffs agreed to the forum selection clause quoted above.  *Supra* p. 5; Ellis Dec. ¶¶ 14, 18; Ex. 4.  In so doing, Plaintiffs agreed that lawsuits "arising out of or relating to . . . [their] use of the Rumble Services" would be brought in Ontario, Canada.  Ex. 4.  And there can be no dispute that this suit falls within the scope of this clause. "Rumble Services" is defined to include "access to user-generated videos and other content . . . via the Rumble Site," *id.*, and the Complaint makes clear that this suit arises out of Plaintiffs' access "to Rumble's video streaming services." Compl. ¶ 1.[4]

---

[2]    This Court may appropriately take judicial notice of SEC filings.  *See Clark v. Ashland, Inc.*, 2014 WL 2199643, at *3 (M.D. Fla. May 27, 2014) (looking to SEC filing on motion to dismiss to determine relationship between parent and subsidiary).

[3]    "When ruling on a motion to dismiss for *forum non conveniens*, a court may 'consider matters outside the pleadings if presented in proper form by the parties.'" *Turner v. Costa Crociere S.P.A.*, 488 F. Supp. 3d 1240, 1245 (S.D. Fla. 2020).

[4]    Although the agreement is between Plaintiffs and Rumble Canada, Rumble Inc. still is entitled to the benefit of the forum selection clause because it is obviously closely related to the dispute.  *See Simpson v. Cardoso*, 2020 WL 13411949, at *3 n.5 (S.D. Fla. Jan. 2, 2020) (nonparty "should benefit from" forum selection clause where it is "'closely related' to the dispute" (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998)).

In the forum selection clause, Plaintiffs "agree[d] that the *exclusive* jurisdiction for any claim or action . . . *shall lie only* in the Ontario Superior Court of Justice at Toronto."  Ex. 4.  The use of the terms "exclusive" and "shall . . . only" make this a mandatory—and not a permissive—forum selection clause for Plaintiffs.  *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021).  Plaintiffs thus have "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Atl. Marine Constr. v. U.S. Dist. Court*, 571 U.S. 49, 64 (2013).  As such, this Court should dismiss for *forum non conveniens* in favor of the selected forum: Ontario, Canada.

As the Eleventh Circuit has made clear on several occasions, a forum selection clause "carries near-determinative weight."  *GDG Acquisitions v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014); *accord, e.g.*, *Aviation One v. Airborne Ins. Consultants*, 722 F. App'x 870, 883 (11th Cir. 2018).  "Only under *extraordinary* circumstances unrelated to the convenience of the parties should a court decline to enforce a forum-selection clause."  *Stiles v. Bankers Healthcare Grp.*, 637 F. App'x 556, 562 (11th Cir. 2016).

The nonmovants—here, Plaintiffs—bear "the burden of showing exceptional circumstances, predicated on public-interest considerations, to justify disturbing" the parties' agreement.  *Aviation One*, 722 F. App'x at 883.  The Eleventh Circuit has instructed that an agreement to litigate in a specific forum will be upset only under narrow circumstances:  (1) if the forum selection

clause itself "was induced by fraud or overreaching," (2) if "the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum," (3) if "the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy," or (4) if "enforcement of such provisions would contravene a strong public policy." *Id.*

None of these "exceptional circumstances" is present here.  Thus, the Court should hold Plaintiffs to their agreement to bring this claim against Rumble in Ontario, Canada.

  1.  *The forum selection clause was not induced by fraud or overreaching.*

"In order for a forum selection clause to be invalidated on the basis of the first factor, fraud or overreaching, a plaintiff must specifically allege that the clause was included in the contract at issue because of fraud." *Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1236 (11th Cir. 2011).

Here, the Complaint is devoid of any allegation that the forum selection clause was fraudulently inserted in Rumble's Terms and Conditions—indeed, the Complaint tellingly does not even *mention* the clause.  For this reason, Plaintiffs cannot rely on the first factor to invalidate the clause.  *See id.* (where plaintiffs "have never made" the allegation that the clause was procured by fraud, "the first factor does not support non-enforcement of" the clause); *Pelletier v. WMT Housing, LLC*, 2019 WL 13144190, at *3 (M.D. Fla. Mar. 4, 2019) ("Despite Plaintiffs' conclusory arguments in the Opposition, Plaintiffs did not specifically allege in the Complaint that the forum-selection clause was included in the

Contract because of fraud."); *Smith v. Oasis Legal Fin.*, 2017 WL 4922271, at *4 (M.D. Fla. Oct. 31, 2017) (with no allegation that "the forum selection clause was entered through fraud," the "clause cannot be invalidated on the grounds of fraud or overreaching").

It is of no moment that the clause was contained on a website, and even if Plaintiffs claim they did not read the terms, that too does not matter. "The fact that a forum-selection clause is contained within a so-called clickwrap agreement, where a user accepts a website's terms and conditions, does not in and of itself render the clause invalid.  In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts." *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011).[5]

2.  *Plaintiffs would not be deprived of their day in court.*

Plaintiffs likewise cannot establish that they will "effectively [] be deprived of [their] day in court because of the inconvenience or unfairness of the chosen forum." *Aviation One*, 722 F. App'x at 883.  Again, the Complaint is devoid of any mention of the forum selection clause, and Plaintiffs have not even attempted to argue that Canada would be an inconvenient or unfair forum.  That is not surprising, as courts in this Circuit and elsewhere have not hesitated to tell

---

[5]      The physical characteristics of Rumble's forum selection clause were sufficient because the clause was set out in "identical typeface" as the other terms and under a "clear heading[]." *Lebedinsky v. MSC Cruises*, 789 F. App'x 196, 201 (11th Cir. 2019).  The terms also were adequately communicated to Plaintiffs by virtue of the direct hyperlink next to the checkbox Plaintiffs clicked to agree to the Terms.  *See Feggestad v. Kerzner Int'l*, 843 F.3d 915, 919 (11th Cir. 2016) (enforcing electronic forum selection clause where plaintiffs were provided hyperlink and failed to demonstrate that they "were prevented from reading the terms and conditions").

plaintiffs that Canada is an available and adequate forum.  *See, e.g.*, *CAE USA v. XL Ins.*, 2011 WL 1878160, at *7 (M.D. Fla. May 17, 2011) ("[T]he Canadian forum is an available and adequate alternative forum."); *Grape Stars Int'l v. nVentive, Inc.*, 2020 WL 4586123, at *11 (S.D. Fla. Aug. 10, 2020) ("no indication Quebec is not an available forum").[6]

To be sure, it could conceivably be more expensive for Plaintiffs to litigate in Canada, but the Eleventh Circuit has squarely held that "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *Rucker*, 632 F.3d at 1237.  This is especially the case where, as here, "any inconvenience the plaintiffs would suffer by being forced to litigate in [the contractually selected forum] was foreseeable at the time of contracting."  *Id.*

Notably, in *Rucker*, the Eleventh Circuit approvingly cited a decision from the Second Circuit in which the court granted dismissal of a U.S. citizen's lawsuit where the plaintiff had agreed to litigate in England, "even though none of the plaintiff's witnesses, documents, or the parties to the action were located in England."  *Id.*  It can hardly be doubted that if a forum selection clause pointing to England can be enforced in those circumstances, so too should the clause here pointing to our neighbor to the north—as this court has done before.  *See CAE*

---

[6]    *See also, e.g.*, *Vijuk Equip. v. GUK-Falzmaschinen*, 902 F. Supp. 162, 164 (N.D. Ill. 1995) ("forum selection clause specifying Canada as the parties' forum of choice" did not "effectively deprive [the plaintiff] of its day in court").

*USA*, 2011 WL 1878160, at *7.[7]  Indeed, by contrast to the case cited in *Rucker*, many of the key witnesses and documents at issue here will be located in Canada. Ellis Dec. ¶ 9.

Thus, in light of Plaintiffs' agreement to litigate suits arising out of their use of Rumble's services in Canada, they simply should not be heard to complain of the possible minor inconvenience of litigating across the border.

### 3.  There is nothing unfair about Canadian law.

Plaintiffs also cannot show that Canadian law is so unfair that it would "deprive [them] of a remedy."  *Aviation One*, 722 F. App'x at 883.  The Eleventh Circuit has made clear that "courts will not invalidate choice clauses . . . simply because the remedies available in the contractually chosen forum are less favorable."  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998).  Rather, "[a] forum is considered adequate if it 'provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiff's injuries.'"  *Gordon v. Sandals Resorts*, 418 F. Supp. 3d 1132, 1139 (S.D Fla. 2019) (quoting *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2001)); *see also Lisa S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006)

---

[7]     To the extent Plaintiffs contend that litigating in Canada is inconvenient given its location, it bears noting that Toronto is closer to Plaintiff Buechler's home state of Maryland (Compl. ¶ 11) than is Tampa—and Plaintiff Martinez's home state of New Mexico (*id.* ¶ 13) is roughly equidistant to Tampa and Toronto.  This Court can take judicial notice of these facts. *See Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

(Guatemala deemed adequate despite inability to assert a RICO claim there).[8]

Plaintiffs would be hard pressed to show that Canada does not provide for "litigation of the subject matter of the dispute" and possible redress of their supposed injuries.  Indeed, there is a statute in Canada that covers the same subject matter of this dispute—the Personal Information Protection and Electronic Documents Act, S.C. 2000, c. 5.  *See Dennison v. Air Canada*, 2010 WL 11699778, at *2 (D. Or. Oct. 13, 2010) ("The Personal Information Protection and Electronic Documents Act is a Canadian privacy law that prohibits the disclosure by any person of personal information belonging to another without the other person's consent[.]").

The existence of a Canadian statute that provides for redress of Plaintiffs' supposed injuries is sufficient reason to enforce the forum selection clause here. *See Lisa*, 441 F. Supp. 2d at 1238.

4.  *Enforcement of the clause would not contravene public policy.*

Finally, Plaintiffs cannot show that enforcement of the forum selection clause "would contravene a strong public policy."  *Aviation One*, 722 F. App'x at 883.  To begin with, this Court has made clear that "protecting the legitimate expectations of contracting parties" is a "fundamental policy."  *Universal City Dev. v. Ride & Show Eng'g*, 2006 WL 845167, at *2 (M.D. Fla. Mar. 30, 2006).

---

[8]      *See also Lipcon*, 148 F.3d at 1297 ("the agreement to submit to . . . the jurisdiction of the English courts must be enforced even if that agreement tacitly includes the forfeiture of some claims") (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360-61 (2d Cir. 1993)).

Plaintiffs here can point to no policy—let alone a "strong" policy—that would warrant upsetting the parties' expectation that any dispute between them would be litigated in Ontario. "[I]t has been held that the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt." *McCoy v. Sandals Resorts*, 2019 WL 6130444, at *9 (S.D. Fla. Nov. 19, 2019).

Courts are loathe to invalidate forum selection clauses under the "public policy" exception—especially where, as here, the matters concern international commerce (the operation of an online platform used across national borders). *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972) ("We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."); *Artier LLC v. Carre D'Artistes SAS*, 2017 WL 7732129, at *4 (S.D. Fla. Nov. 20, 2017) (enforcing agreement to litigate in France; any interest of the U.S. in enforcing its laws "must be qualified in an era of expanding world trade and commerce").

Rumble had a legitimate interest in limiting the fora in which it might be sued, and there is no public policy—strong or otherwise—even remotely sufficient to invalidate that interest. *See Kalb v. Marriott Int'l*, 2017 WL 6565243, at *4 (S.D. Fla. Oct. 5, 2017) (enforcing agreement to litigate in Mexico "would not contravene a strong public policy," citing defendants' "legitimate interest in limiting the fora in which they can be sued").

## II.      Plaintiffs Fail to State a Claim Under the VPPA.

Even if this case were properly in this forum, the Complaint should still be dismissed because it fails to state a meritorious claim.  Under Rule 12(b)(6), a court should dismiss a complaint where the plaintiff does not provide "enough well-pleaded factual allegations to state a claim for relief that is plausible on its face." *Sellstate Realty Sys. v. Black*, 2021 WL 354169, at *2 (M.D. Fla. Feb. 2, 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551 (2007)).  Where such allegations are lacking, "the Court need not accept as true any conclusory allegations in the complaint based 'upon information and belief.'" *Id.*

The Complaint should be dismissed for at least *four* independent reasons: (1) the allegations themselves show that *Rumble* did not disclose PII to Facebook; (2) the Complaint contains no well-pled allegations that *Plaintiffs'* PII was ever disclosed to Facebook; (3) to the extent Rumble did disclose, it did not act with actual knowledge, as is required; and (4) Plaintiffs do not plead that they accessed "prerecorded" materials (as opposed to live streams) on Rumble.  Thus, the Court should dismiss the Complaint with prejudice.  *See Cita Trust Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (affirming dismissal with prejudice of first complaint where "amendment would have been futile").

### A.      Rumble Did Not Disclose Any "Personally Identifiable Information" to Facebook.

To state a claim under the VPPA, Plaintiffs must plead that a "video tape service provider . . . knowingly disclose[d] . . . personally identifiable

information." 18 U.S.C. § 2710(b).[9]  The statute defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  *Id*. § 2710(a)(3).  The Complaint should be dismissed because it is entirely devoid of well-pled allegations showing that Rumble disclosed any such PII to Facebook.

Plaintiffs' theory of improper disclosure is that their Facebook IDs were sent to Facebook along with the URLs of certain videos viewed on Rumble's servers.  Compl. ¶ 68.  But even if true, and even assuming that this information can qualify as PII, the allegations do not give rise to a VPPA violation for a simple reason:  Plaintiffs do not plead that ***Rumble ever possessed or had access to Plaintiffs' Facebook IDs, let alone that Rumble transmitted or sent those Facebook IDs to anyone***.  Thus, as a matter of logic and the plain statutory text, Rumble did not "disclose" PII.

That defect is fatal here.  The VPPA bars video tape service providers from "disclos[ing]" PII—here, the claimed disclosure is that certain Facebook IDs accessed certain URLs on Rumble.[10]  But Plaintiffs do not plead that Rumble knew or had access to users' Facebook IDs, let alone sent them.  Rumble cannot "disclose" something it does not have.  Indeed, "it would be impossible to disclose information without sending, transmitting, communicating, or distributing it."

---

[9]      For purposes of this motion, Rumble assumes *arguendo* that it qualifies as a "video tape service provider" under the VPPA.

[10]     To qualify as PII, the information must both "identif[y] a person" and identify that he "requested or obtained specific video materials or services."  If Rumble merely disclosed that anonymous people had watched specific videos, that would not be PII.

*Peerless Ins. Co. v. Law Offices of Jason E. Taylor P.C.*, 2020 WL 4370941, at *3 (W.D.N.C. July 8, 2020), *M&R adopted*, 2020 WL 4369446 (W.D.N.C. July 30, 2020).

Although Plaintiffs attempt through artful pleading to elide this basic defect in their claim, the Complaint is clear that Rumble did not send, transmit, communicate, or distribute anyone's Facebook ID to Facebook.  Rather, critically, "the Pixel sen[d]s . . . PII to Facebook."  Compl. ¶ 70; *see id.* ¶ 63 ("the Pixel . . . send[s] Facebook cookies identifying their subscribers, including unencrypted [Facebook] IDs. . . .  *[T]he Pixel's sharing of information with Facebook* enabled Defendant to show targeted advertising[.]").

As Plaintiffs explain, each user's Facebook ID is "associated with the c_user cookie"—*i.e.*, the cookie that a user has installed on his device if he agrees to let Facebook place cookies on his device (separate and apart from his use, if any, of Rumble).  *Id.* ¶ 73; *see id.* ¶ 59 ("The Pixel . . . . places and triggers specific cookies[.]").  In other words, the c_user cookie is a tracker installed on a Facebook user's device *by Facebook.  See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 927 (N.D. Cal. Oct. 23, 2015); *Hulu*, 86 F. Supp. 3d at 1093–94 n.3 ("Cookies contain information that identifies . . . the webserver that wrote the cookie (e.g., . . . facebook.com). . . .  The only servers that can access a particular cookie are those associated with the domain that wrote the cookie.").

Not once does the Complaint allege that the Pixel accesses Rumble's servers in order to transmit Facebook IDs to Facebook or that Rumble ever had

access to or possession of any user's Facebook ID.  Thus, to the extent Plaintiffs allege any "disclosure," it was *Plaintiffs*—not Rumble—who disclosed their Facebook IDs via *their own web browsers* to Facebook.  *Cf. Abernethy v. IRS*, 909 F. Supp. 1562, 1570–71 (N.D. Ga. 1995) (claim for "alleged violations of the Privacy Act's prohibition on disclosure" fails because, among other reasons, "[t]he Plaintiff cannot sue . . . for disclosures which the Plaintiff made himself").

Nor can Plaintiffs prevail by contending that, even if Rumble itself did not send users' PII, Rumble installed code that caused a disclosure.  Congress could have written the Act to bar a defendant from "causing" disclosure of PII— language that does appear in *other* privacy and confidentiality statutes.  *See, e.g.*, 15 U.S.C. § 6821 ("for any person to obtain or attempt to obtain, or *cause to be disclosed* or *attempt to cause to be disclosed* to any person"); 18 U.S.C. App. 3 § 5 ("defendant reasonably expects to disclose *or to cause the disclosure* of classified information."); 10 U.S.C. § 949p-5 ("If an accused reasonably expects to disclose, *or to cause the disclosure of*, classified information . . .").

But the VPPA does not say that.  Rather, it imposes liability only where the defendant "discloses" protected information.  "If Congress had wanted to" impose VPPA liability on defendants who not only disclose but *cause* disclosures, "it knew exactly how to do so—it could have simply borrowed from the statute next door. . . .  Congress's choice to depart from the model of a closely related statute is a choice neither we nor [an] agency may disregard." *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018); *see Animal Legal Def. Fund v. U.S. Dep't of*

*Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling."). And it is, of course, a cardinal principle of statutory instruction that "a court cannot supply words purposely omitted" from a statute. *Thai Meditation Ass'n v. City of Mobile*, 980 F.3d 821, 839 (11th Cir. 2020). Thus, because it was *Plaintiffs* (through their web browsers) who made any disclosure, the Complaint must be dismissed.

### B. There Are No Well-Pled Allegations that Rumble Disclosed *Plaintiffs'* Information.

The Complaint further lacks any meaningful allegation that Rumble ever disclosed *Plaintiffs'* PII. Indeed, the most that Plaintiffs can muster is a single-sentence allegation made "[o]n information and belief":

> On information and belief, Defendant disclosed to Facebook Plaintiffs' unencrypted FIDs along with the titles and URLs of the videos they accessed on Defendant's website within the past two years on one or more occasions.

Compl. ¶ 86. This conclusory allegation fails to provide any factual content. It does not establish *when* Rumble disclosed information to Facebook, *what* information Rumble disclosed, or even what device(s) Plaintiffs were using at the time of the supposed disclosures. Indeed, neither named Plaintiff even alleges (1) that he accessed Rumble using the same device he had used to access his Facebook accounts, *or* (2) that there was a live c_user cookie containing his Facebook ID on that device when he accessed a video on Rumble—all of which would be necessary for his device to execute the code that would transmit his Facebook ID to Facebook. Instead, Plaintiffs merely allege that each "has had" a

Facebook account. *Id.* ¶ 84. In a post-*Twombly* world, such bare allegations made on "information and belief" do not suffice to state a claim. *See, e.g.*, *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining to "take as true" certain "allegations 'upon information and belief'"); *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *2 n.3 (D.N.J. July 2, 2014) (dismissing VPPA claim and refusing to credit allegations made on information and belief).

Nor can Plaintiffs rely on the hypothetical disclosure of *absent* class members' PII. "[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). Because neither named Plaintiff here pleads a VPPA violation, the Court should dismiss the Complaint. *See, e.g.*, *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1179–81, 1185–86 (S.D. Fla. 2019) (dismissing class claim for named plaintiffs' lack of standing).

### C.    Plaintiffs Have Not Pled that Rumble "Knowingly" Disclosed their Information.

Even if Plaintiffs adequately pled that Rumble disclosed PII, they have not pled that Rumble did so "knowingly." 18 U.S.C. § 2710(b).

The VPPA requires "actual knowledge." *Hulu*, 86 F. Supp. 3d at 1095. As the *Hulu* court held, "[f]or there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a customer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *Id.* Here, actual knowledge of conditions (1) and (3) is not alleged.

*First*, critically absent from the Complaint is any allegation that *Rumble* ever knew *anyone's* Facebook ID.  And it is elementary that a party cannot "knowingly" disclose something that it itself *never knew*.  *See Chutich v. Green Tree Acceptance*, 1993 WL 173813, at *9 (D. Minn. Apr. 19, 1993) ("[I]t is axiomatic that a corporation cannot disclose what it does not know[.]"); *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997) ("It is a logical impossibility for a party intentionally to disclose information that it does not know it has.").  Thus, the Complaint fails to plead a VPPA claim against Rumble.

*Second*, Plaintiffs also have failed to plead that Rumble knowingly disclosed "the fact that [any person] 'requested or obtained' that material."  *Hulu*, 86 F. Supp. 3d at 1095.  As the *Hulu* court observed, a VPPA plaintiff must show that the defendant "connect[ed]" her identity "and that of the video material" she viewed online.  *Id.* at 1096.  Here, Plaintiffs fail to do so.  Plaintiffs do not plead that, when a given user accesses a Rumble video, Rumble knows if the user has an active Facebook cookie that will send the user's Facebook ID to Facebook.  Thus, taking Plaintiffs' allegations on their face, at the time a Rumble user's device makes the supposed disclosure, Rumble has *no knowledge* that a given user's Facebook ID is sent along with the URL of a video on Rumble's site.

At most, Plaintiffs allege that a Facebook ID sometimes is sent *by a user's browser* to Facebook at the same time the browser sends the URL of a Rumble video to Facebook.  But merely showing "simultaneous[]" delivery of those two pieces of information is insufficient—for the Plaintiffs to plead a VPPA claim,

Rumble had to *know* that *Facebook* "forg[ed]" the connection between a Facebook ID and the fact that a user "requested or obtained specific video materials." *Id.* at 1096; *see also id.* at 1095 ("'knowingly' means consciousness of transmitting the private information").

Here, there is no allegation that Rumble knew that Facebook forged the connection, or that forging such a connection was necessary in order for Rumble to advertise to its users. Indeed, Plaintiffs do not even allege that a single human being at Facebook had access to their PII—let alone that Rumble *knew* that someone at Facebook could or would access it. Thus, Plaintiffs have not pled that Rumble made a *knowing* disclosure in violation of the VPPA.

### D. The Complaint Does Not Plead that Plaintiffs Accessed "Prerecorded" Materials on Rumble.

Plaintiffs also failed to plead that they accessed *prerecorded* videos on Rumble's site (which offers both live and on-demand content). The VPPA applies only where the defendant is engaged in the business of "rental, sale, or delivery of *prerecorded* video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). This defect warrants dismissal. *See Stark v. Patreon, Inc.*, 2022 WL 7652166, at *6 (N.D. Cal. Oct. 13, 2022) ("a video must be prerecorded to fall within the VPPA's definition of 'similar audio visual materials'"; dismissing complaint that "does not specify whether [the videos] were broadcast live or prerecorded"); *Louth v. NFL Ents. LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (dismissing VPPA claims "to the extent they rely upon . . . live content").

## Conclusion

For the foregoing reasons, Rumble respectfully requests that the Court dismiss the Complaint on the ground of *forum non conveniens* or, in the alternative, dismiss the Complaint with prejudice for failure to state a claim.

Dated:  November 23, 2022
New York, New York

Respectfully submitted,

SHUMAKER, LOOP &
KENDRICK, LLP
Jennifer B. Compton
420 S. Pineapple Avenue
P.O. Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660
jcompton@shumaker.com

/s/ Gregory Dubinsky
Gregory Dubinsky (*pro hac vice*)
Jayme Jonat (*pro hac vice*)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
gdubinsky@hsgllp.com

*Attorneys for Defendant Rumble Inc.*

## RULE 3.01(g) CERTIFICATION

Pursuant to Middle District of Florida Local Rule 3.01(g), the undersigned certifies that Defendant's counsel has conferred with Plaintiffs' counsel regarding the relief sought herein via email on November 18, 2022.  Plaintiffs' counsel advised that Plaintiffs oppose the relief requested in this Motion.

Dated: November 23, 2022

/s/Gregory Dubinsky
Gregory Dubinsky
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
gdubinsky@hsgllp.com