```
                    IN THE UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
                            TAMPA DIVISION

JAMES BUECHLER and JESSE
MARTINEZ, on behalf of          Tampa, Florida
themselves and all others
similarly situated,             Case No. 8:22-cv-2237-SDM-AAS

          Plaintiffs,           April 19, 2023

     -vs-                       10:20 a.m.

RUMBLE INC.,                    Courtroom 10B

          Defendant.
_____
```

**DIGITALLY RECORDED MOTION HEARING**
BEFORE THE HONORABLE AMANDA ARNOLD SANSONE
UNITED STATES MAGISTRATE JUDGE

OFFICIAL COURT REPORTER:

       Shelli Kozachenko, RPR, CRR, CRC
       221 North Hogan Street, #185
       Jacksonville, FL  32202
       Telephone:  (904) 301-6842

                    (Proceedings recorded by electronic sound recording;
                             transcript produced by computer.)

**A P P E A R A N C E S**

COUNSEL FOR PLAINTIFFS:

      **Hannah Crowe, Esquire**
      Burns Charest LLP
      900 Jackson Street, Suite 500
      Dallas, TX  75202

      **Christopher Cormier, Esquire**
      Burns Charest LLP
      4725 Wisconsin Ave, NW, Suite 200
      Washington, DC  20016


COUNSEL FOR DEFENDANT:

      **Gregory Dubinsky, Esquire**
      Holwell Shuster & Goldberg LLP
      425 Lexington Avenue
      New York, NY 10017

      **Ryan Guerin, Esquire**
      Shumaker, Loop & Kendrick, LLP
      240 South Pineapple Avenue, 10th Floor
      Sarasota, FL 34236

```
 1                      P R O C E E D I N G S
 2    April 19, 2023                             10:20 a.m.
 3                              -  -  -
 4            THE COURT:  ... break.  No problem.  But I decided I
 5    should just go ahead and stay out rather than us getting this
 6    kind of back-and-forth, you know, almost the courtroom
 7    equivalent of the telephone game.
 8            So okay.  We are here on Case No. 22-cv-2237-SDM-AAS,
 9    James -- I've been pronouncing it Buechler in my head.  I don't
10    know if that's right?
11        (No audible response.)
12            THE COURT:  Okay.  And Jesse Martinez versus Rumble
13    Incorporated.
14            Could counsel state their appearances, starting with
15    counsel for the plaintiffs, please.
16            MS. CROWE:  Your Honor, I'm Hannah Crowe on behalf of
17    the plaintiffs.
18            THE COURT:  Thank you.
19            MR. CORMIER:  Good morning, Your Honor.  Chris
20    Cormier, also on behalf of the plaintiffs.
21            THE COURT:  Okay.  And go ahead from the defense.
22            MR. DUBINSKY:  Good morning, Your Honor, Gregory
23    Dubinsky on behalf of the defendant, Rumble Inc.
24            THE COURT:  Thank you.
25            MR. GUERIN:  Ryan Guerin, Your Honor, on behalf of
```

1    Rumble.

2         THE COURT:  Great.

3         Okay.  So we are here on the motion -- where did it

4    go? -- motion for a discovery scheduling conference.  I mean,

5    we're -- we're having the conference here today, so I guess in

6    a sense, that's already been granted.

7         But -- but the request, it sounds like, is that --

8    and the motion says bifurcation but really to front-load the

9    venue discovery and then have merits discovery occur

10   subsequently.

11        So I've read the motion.  I've also read plaintiffs'

12   opposition and then also taken the time to go through all the

13   exhibits that plaintiffs attached to their opposition.

14        Let me go ahead and hear from you -- well, who's

15   going to speak for Rumble, Mr. Dubinsky or Mr. Guerin?

16        MR. DUBINSKY:  Yes, Your Honor.  I'll speak for

17   Rumble.

18        THE COURT:  Okay.  And I don't -- I don't recognize

19   any of your faces.  I don't think any of you have appeared

20   before me.

21        Just so you know, particularly in civil hearings, I

22   have no problem if you sit down, if you stand up.  If you start

23   off sitting down and at some point decide you're ready to stand

24   up, that's no problem for me either.  This is a more casual

25   experience than criminal hearings go.

1          So go ahead.

2          MR. DUBINSKY:  Thank you, Your Honor.  I'll stand, if

3   Your Honor doesn't mind, just to --

4          THE COURT:  Sure.

5          MR. DUBINSKY:  -- get the exercise.

6          THE COURT:  And let me just -- just let me -- in

7   looking back over the timeline, and I'll just kind of keep it

8   as to the point as I can, there was -- discovery was served

9   back in 2022.  There's been some back-and-forth.  There's been

10  some responses that plaintiffs don't think were full enough.

11  There's been some meet-and-confers.

12         Now, in terms of the timing of the meet-and-confers,

13  it looks like the last -- the two-hour-long meet-and-confer was

14  on March 9th and then, lo and behold, four days later you're

15  getting the order on the motion to dismiss, which I'm sure

16  dramatically changed the landscape, from at least defense's

17  perspective, and that's what brought this motion here.

18         I do know there had been an order denying the motion

19  to stay discovery that I had entered, and then that was

20  objected to, and then Judge Merryday had overruled the

21  objections to that.

22         I do believe -- let's see.  I know the timing of that

23  was after -- let me see.  Well, actually --

24         MR. DUBINSKY:  So --

25         THE COURT:  -- that was before his order on the

1  motion to dismiss.

2       MR. DUBINSKY:  That's right, Your Honor.  It was --

3  it was, I believe, about a week before, if memory serves.

4       THE COURT:  And that would make sense in the timeline

5  because you got that order on March 7th, and then you had that

6  fulsome meet-and-confer on March 9th.

7       MR. DUBINSKY:  And if I could add just to that

8  timeline, Your Honor, and set the table a little bit, if that's

9  all right.

10      THE COURT:  Sure.

11      MR. DUBINSKY:  We've responded, following a

12 meet-and-confer, with a full letter saying, (unintelligible),

13 you know, additional explanations of our position and documents

14 we're willing to produce.  That's been turned over to them.

15      We've also produced 811 pages of documents that go

16 to -- primarily to the forum-related issue, and so that's under

17 way.  We also just propounded some requests going to that

18 specific issue.

19      THE COURT:  When you say requests, you mean requests

20 for documents or interrogatories?

21      MR. DUBINSKY:  Requests for documents,

22 interrogatories, and requests for admissions.

23      THE COURT:  Okay.

24      MR. DUBINSKY:  They were targeted in what we believe

25 and what Judge Merryday described as the pertinent issue with

1    regard to exclusive venue in Canada.

2           THE COURT:  And I know I didn't print all the

3    exhibits; I just looked at them.

4           But -- so in looking at their exhibits, what you're

5    saying is you provided a letter after -- let's see, the last

6    letter -- because it -- it seemed -- there we go.  Plaintiff's

7    letter was after the meet-and-confer but also after Judge

8    Merryday's order on the motion to dismiss.

9           MR. DUBINSKY:  That's right, Your Honor.

10          THE COURT:  It was a responsive letter to that.

11          MR. DUBINSKY:  We followed up, I believe it was,

12   April -- I don't remember the exact date.  I think it was

13   April -- mid April that we sent them a letter following up on

14   our meet-and-confer and responding to some of their points.

15          You know, we -- we had some back-and-forth about some

16   requests that we found overbroad, which I think they've

17   acknowledged were overbroad.  We've come forth with

18   explanations of our positions on a few other items.

19          We did state in the letter that we reserved the right

20   to request bifurcation of discovery and that we think it's

21   appropriate that discovery, as you said, Your Honor, proceed in

22   a front-loaded fashion.

23          But we did set forth our positions on their requests

24   that were merits -- primarily merits requests.

25          THE COURT:  Okay.  So what is it that you are

1    envisioning -- I'm saying front-loaded instead of bifurcated

2    because, to me, bifurcated suggests there's this clean line of

3    demarcation, and I just -- nothing's ever that clean in

4    discovery.  If only it were, we would -- all of your billable

5    hours would be a lot less.

6            But it's -- really it's more of a matter of

7    front-loading the venue issue, I would suppose, so that you can

8    then perhaps do a summary judgment and -- which is, it sounds

9    like, what Judge Merryday's inviting -- I shouldn't say

10   inviting, but indicating is a better -- a better record for him

11   to then be able to adjudicate the issue.

12           MR. DUBINSKY:  So if I -- if I could address these

13   issues and just take a step back here --

14           THE COURT:  Sure.

15           MR. DUBINSKY:  -- just to set the table a little bit.

16           This case is a -- is a -- as you know, is an action

17   under the Video Privacy Protection Act, and it's one of dozens

18   of what are essentially copycat actions that have been filed

19   across the country against the NFL, Hulu, TikTok, and many

20   other companies that are offering websites, all trained on the

21   very technical issue of the use of the Facebook pixel in order

22   to facilitate advertising.

23           So what Judge Merryday's decision, as we read it,

24   states is that there are two distinct issues, obviously, in

25   this case.  One of those is the forum selection clause that

 1    sets forth exclusive jurisdiction in Ontario, Canada.

 2              He described the argument for that exclusivity in

 3    Canada as formidable and noted that although, you know, certain

 4    facts were, on the record on that motion to dismiss,

 5    insufficiently distinct to bring a dismissal in favor of

 6    Canada, that discovery directed to the pertinent issue,

 7    followed by a motion for summary judgment -- I'm looking at his

 8    order now -- seems a more reliable mechanism to address that

 9    issue.

10              THE COURT:  And I'm looking at his order too.

11              MR. DUBINSKY:  And -- and so our view, Your Honor, is

12    that my friends say that, you know, there's a huge amount of

13    overlap, and this is going to spawn dozens of discovery

14    disputes and be unmanageable.

15              We think that's just not at all the case.  The

16    question of is this forum selection clause valid and

17    enforceable is really a narrow, targeted issue.  And we can

18    look at plaintiffs' own submissions on that -- on that score.

19              One question is, what were the terms and conditions

20    when plaintiffs entered into them when they created their

21    accounts and signed up for Rumble?

22              Another issue is, what does Canadian law provide?  My

23    friends dispute that they have a remedy in Canada for the

24    substance of their allegations.  We contested that.  We put it

25    in an affidavit on the motion to dismiss, but perhaps Judge

1    Merryday contemplated that we would put in a full expert report

2    on the Canadian law issue, that they would have an opportunity

3    to put in a Canadian law expert, and we would do depositions.

4           And a third issue is the corporate structure as

5    between Rumble Inc., which is my client, and Rumble Canada

6    Inc., which is a Canadian corporation that actually operates

7    the rumble.com platform.  The terms and conditions in the

8    website involve Rumble Canada Inc.  My friends have said that

9    my client can't invoke the forum selection clause because it's

10   the U.S. holding company that indirectly owns Rumble Canada

11   Inc.

12          So those issues have nothing to do, Your Honor, as I

13   think on its face it's clear, with how the Facebook pixel

14   operates, what kinds of disclosures were made from plaintiffs'

15   browsers when they accessed rumble.com, what -- you know,

16   what -- what is the agreement between -- if any, between Rumble

17   and Facebook, and the various very technical issues that go to

18   the operation of the Facebook pixel.

19          So I -- you know, our view is this is really not a

20   laborious and inefficient way to proceed, to bifurcate.

21   Essentially, what it would do is take what is clearly the

22   outcome-dispositive issue, as Judge Merryday himself set forth,

23   and spare the parties tremendous expense and unnecessary

24   burdens in conducting both tracks of discovery once, and allow

25   for the venue or the *forum non* issue to be addressed in the --

1   at the earliest possible date and thereby promote judicial

2   economy.

3           THE COURT:  And so, Mr. Dubinsky, then, it sounds

4   like, based on the three buckets that you've described of

5   discovery that you would need -- so the terms and conditions

6   discovery; Canadian law, which you have provided via an expert;

7   and then also the organizational chart of Rumble Inc. and

8   Rumble Canada, that in terms of the discovery you would be

9   taking would be -- you know, I shouldn't say discovery.  The

10  depositions you would need to take would be of the two named

11  plaintiffs to address the issue of the terms and conditions.

12          MR. DUBINSKY:  Well, so a few points on that, Your

13  Honor.  So we've argued that as a matter of law, it doesn't

14  matter factually whether or not they say that they did or did

15  not read the terms and conditions.  But we do think,

16  notwithstanding that, a -- you know, a -- some amount of

17  deposition will be appropriate.

18          We're willing to work with plaintiffs and their

19  counsel to be reasonable here.  I don't think we need the full

20  seven hours allotted to us under the rules, at least for this

21  first phase.  So we would be willing to -- to limit -- you

22  know, have a limited deposition of the plaintiffs on that

23  issue.

24          As for the depositions on our side, we think there's

25  only really one or two people on our end that -- that really

1  have much to say of -- of real substance on the forum issue.

2  And on our side, we're -- we're certainly willing to -- to

3  undergo multiple depositions of those one or two individuals,

4  you know, because our view is the merits discovery, which is

5  going to be primarily directed, obviously, at us, that is, the

6  defendant, will be a far greater burden and expense on our end

7  than for one or two people to have to go through multiple

8  depositions.

9          THE COURT:  Well, and when you say the one or two --

10 so, I mean, I would assume that your -- that you would say to

11 plaintiffs' counsel, "Look, here are the two that we are going

12 to provide affidavits for in support of summary judgment.  If

13 you would like to depose them, have at it.  Here are a bunch of

14 dates that they're available."  Is that --

15         MR. DUBINSKY:  Exactly, Your Honor, yeah.  I think

16 that that would be appropriate.

17         THE COURT:  I guess for your expert, same thing.

18         Now, of course, if they have a counter-expert on the

19 Canadian law, I would expect you'd want to take that person's

20 deposition.

21         MR. DUBINSKY:  Yes, Your Honor.  And we would make

22 our expert available for deposition, of course, by plaintiffs'

23 counsel.

24         You know, our -- our thinking on the timeline is, you

25 know, we think that this is all very narrow and targeted and

1   can be done in 60 days.  You know, to my friend's point, in his

2   papers, that this could take years, we think this can be done

3   in 60 days, with 30 days thereafter to file any -- or a first

4   motion for summary judgment directed solely to this issue of

5   the Canadian forum.

6           So we would propose, for consideration by Your Honor,

7   June 18 to complete all discovery on the forum issue and July

8   18 to file a motion for summary judgment on that issue.

9           You know, we think this is clearly the efficient and

10  economical way to proceed that spares all parties the

11  burdensome expense of going through full-fledged merits

12  discovery.

13          You know, my friends have propounded requests for

14  everything, frankly, under the sun.  They've asked for a

15  detailed list of all of our -- all of our subscribers.  They

16  want, you know, all documents concerning the plaintiffs.  They

17  want, you know, very intrusive discovery into the operation of

18  our -- our platform and all information that's sent to third

19  parties, all our advertising strategies.

20          They've asked for a lot, which is their right, of

21  course, to -- to ask for those things.  But rather than proceed

22  on that track, we think it would be far more sensible to have a

23  targeted discovery phase on what we think is a very specific

24  and clear-cut issue.

25          And if we -- if we lose on that issue, then -- then

1  we can obviously go through the full-fledged merits discovery

2  process.

3          THE COURT:  Let me -- two more questions I have --

4  well, it's sort of dangerous to say that because then you end

5  up with three, four, or five questions.

6          MR. DUBINSKY:  I'm available, Your Honor, at your

7  disposal.

8          THE COURT:  So for the named plaintiffs, I mean, I do

9  see that they could make an argument of, "Look, why should

10  our -- why should our plaintiffs have to sit for two

11  depositions?"

12          Now, under the rules you get seven hours with each

13  plaintiff.  Are you willing to commit that this terms and

14  conditions -- any deposition testimony that you get from them

15  at this point -- and I agree with you; it could be very limited

16  in duration -- could then be carved out from that seven hours?

17          MR. DUBINSKY:  We're willing to -- to stipulate to

18  that.

19          THE COURT:  And, look, I'm not trying to invite

20  gamesmanship.  Obviously if they then come back and

21  cross-examine for three hours, that wouldn't count to your

22  seven hours.

23          But that is something that you'd be willing to

24  stipulate to?

25          MR. DUBINSKY:  Yes, Your Honor.

1          THE COURT:  Okay.  And then the other thing that I
2     just want to put out there, because I don't want anyone to feel
3     like I've led you down through this primrose path.  I don't
4     know for sure that you would be able to do multiple summary
5     judgment motions.
6               The way that our rules contemplate and typically the
7     case management and scheduling order, which I know you don't
8     have yet but I expect you'll get after this hearing from Judge
9     Merryday's chambers, it's -- the typical case -- and I say that
10    because this is not a typical situation.
11              The typical case, the -- each side only has really
12    one bite at the apple with a 25-page motion for summary
13    judgment.  So I do think you would -- you're better off asking
14    for permission from Judge Merryday in advance of doing that
15    than you are begging for forgiveness after -- when you're
16    trying to file a second motion for summary judgment.
17              And, again, I can speak more specifically of the
18    typical case.  A case where you have something that is -- as
19    Judge Merryday said, is formidable, like whether there's
20    exclusive venue in Canada, that does, to me at least, present a
21    type of case where perhaps it is more appropriate to give two
22    opportunities for a motion for summary judgment.
23              So, you know, I'm not -- I can't weigh what your odds
24    are of having that motion granted, and it's not up to me.
25    But -- but that is something you'd want to raise with Judge

1   Merryday by way of a very short motion just asking for it.

2          MR. DUBINSKY:   Thank you, Your Honor.

3          And I think, you know, the -- if -- I think, in light

4   of what you've just said, one official way to proceed might be

5   to have discovery itself bifurcated and then for us to request

6   that -- permission to file two summary judgment motions.

7          As Your Honor indicated, this would be a good case

8   for what is typically an unusual procedure, simply because the

9   forum issue is so distinct from the merits that the second

10  motion for summary judgment wouldn't truly be a second bite at

11  the apple.  It would be the merits of their claim that we

12  violated the federal statute, as opposed to whether or not the

13  parties agreed to conduct this litigation in Canada.

14         THE COURT:   And I'm just -- and I'm not the -- the

15  choir to be preaching to for that issue.  That's something

16  that -- that you would need to raise, again, with Judge

17  Merryday.

18         I could set out the deadlines, of course, on

19  front-loading the discovery.  That's something that is in my --

20  sort of in front of me to be able to decide.

21         But giving you advance permission to file two summary

22  judgment motions is not.

23         MR. DUBINSKY:   Understood, Your Honor.

24         So we would gladly accept the front-loaded or

25  bifurcated discovery, and then, as Your Honor indicated, we

1  would then ask the judge, Judge Merryday, for permission, as

2  you've indicated.

3          THE COURT:  And, frankly, you probably want to,

4  rather than waiting till discovery's over, go ahead and ask for

5  that permission first, assuming you are permitted to do

6  front-loaded discovery, so that you then know, going into --

7  going into the case too.

8          MR. DUBINSKY:  Understood.  Thank you, Your Honor.

9          THE COURT:  Anything else you want to add before I

10  turn it over to plaintiffs' counsel to tell me why everything

11  you said is wrong and they should instead --

12          MR. DUBINSKY:  I'm sure --

13          THE COURT:  -- instead the discovery should go

14  forward as it would in a normal case?

15          MR. DUBINSKY:  I'm sure he will -- he will tell me

16  that.

17          I don't think I have anything at this time that we

18  haven't addressed, but I -- if possible, I'd love the

19  opportunity to respond to anything that may need clarification

20  after my friend --

21          THE COURT:  Okay.

22          MR. DUBINSKY:  -- is up.

23          Thank you.

24          THE COURT:  Go ahead for the plaintiffs.

25          MS. CROWE:  Thank you, Your Honor.

1      Your Honor, plaintiffs maintain that there is no

2  basis for bifurcation of discovery in this case.  Plaintiffs

3  have been vigorously pursuing merits discovery for four months

4  at this point.

5      As Your Honor noted, plaintiffs served discovery

6  requests and interrogatories at the end of last year.  And up

7  until two days ago, plaintiffs were the only party in this

8  action that had served any sort of discovery requests.

9      Like you noted, the parties have spent hours meeting

10  and conferring on these requests and have compromised on their

11  positions.  Rumble has also agreed to produce several

12  categories of documents related to merits discovery, contingent

13  upon Your Honor's ruling.

14      Though Rumble made its first document production less

15  than 48 hours ago, the production consisted of seven documents,

16  all of which pertain to forum issues, none of which were

17  responsive to plaintiffs' RFPs, which, again, were served last

18  December.

19      Because the parties have entered into a stipulated

20  protective order, an ESI order, and there is no stay currently

21  in place in this case, there's truly no reason for fulsome

22  document production not to begin now.

23      I will also note that plaintiffs have spent time

24  teeing up a very important third-party subpoena to Meta

25  Platforms, also known as Facebook.  Plaintiffs have served that

1   subpoena on the basis that Facebook has possession of the

2   majority of the relevant data necessary to litigate the merits

3   of this case, and the deadline for compliance is this Friday.

4         So it is all of that merits discovery that has been

5   under way for the past four months that Rumble now asks this

6   Court to halt.

7         THE COURT:  Hang on one second.  Let me just -- let

8   me ask a quick question --

9         MS. CROWE:  Yes, Your Honor.

10         THE COURT:  -- to Mr. Dubinsky.

11         Is -- is Rumble going to, I guess, object on

12   Facebook's behalf or have Facebook not respond to that subpoena

13   in some way, or does Rumble not take a position on that

14   subpoena?

15         MR. DUBINSKY:  I -- I think Facebook's, or Meta's,

16   response is due this Friday, and I think we want to

17   (unintelligible) what they say.

18         THE COURT:  Okay.  So at this point, then --

19         MR. DUBINSKY:  But we would certainly --

20         THE COURT:  Well, I guess -- because I'm viewing

21   those as sort of separate issues.  If Facebook wants to respond

22   to the subpoena, I mean, based on what you said, that perhaps

23   they would have an avenue in Canada, then that documentation,

24   regardless of venue, if they pursue the avenue in Canada, would

25   still be information for them to have.

1          MR. DUBINSKY:  Well, certainly plaintiffs are free,

2     subject to appropriate Canadian law, you know, to introduce

3     whatever evidence they're permitted to under Canadian rules of

4     evidence.

5          And I want to make sure I'm not misunderstanding Your

6     Honor's question.

7          THE COURT:  No.  I mean, because the case is still

8     going forward at this point.

9          Now, granted, you, I think, can effectively argue

10    that there's sort of a burden, an unfair prejudice, to you

11    having to do full-blown merit -- your client having to pay you

12    to do full-blown merit discovery when -- when your client,

13    perhaps, has an early venue issue that takes them away from

14    this venue.

15         I mean, that's different than if Facebook decides to

16    respond to the subpoena.  That's -- that's not a burden on --

17    on your client's part, and that's not costing them money to

18    have you review those documents.  Those are Facebook's

19    documents.

20         MR. DUBINSKY:  That's true, although I believe -- a

21    couple points.  If Facebook does produce documents, they would

22    need to be produced to both of us.  We would get to review

23    those documents and obviously assess the -- the relevance to

24    the merits claims in this case and --

25         THE COURT:  But you could wait and do that -- you

1   could hold off on doing that until after you have a ruling on

2   the venue issue.  You may never have to look at it.

3          MR. DUBINSKY:  That's true.  And to be frank -- and

4   I'm not basing this on any communications I've had with Meta or

5   anything to that effect.  But my understanding is that in -- in

6   cases across the country, they've been subpoenaed, and, you

7   know, it's our understanding they're turning over -- or they're

8   objecting, Your Honor, to -- to the subpoena.

9          But nonetheless, I mean, I think they'll see what

10   Meta has to say and either, you know (unintelligible).  But I

11   think -- I understand Your Honor's going to see that the

12   subpoena issue is distinct from the venue issue, and I agree

13   with that.

14          THE COURT:  Okay.  And just to be clear, I'm assuming

15   you don't represent Meta.

16          Do you represent Meta?

17          MR. DUBINSKY:  No, I don't represent Meta.

18          THE COURT:  I just wanted that on the record.

19          MR. DUBINSKY:  Thank you.

20          THE COURT:  Okay.  And then -- so go ahead,

21   Ms. Crowe.

22          MS. CROWE:  Thank you, Your Honor.

23          Should Meta choose not to comply with the subpoena,

24   the deadline for which is on Friday, plaintiffs will move to

25   compel on that issue relatively quickly.  And, you know,

1    regardless of the upcoming deadline, this -- this has all been

2    in the works for the past four months.

3           I should also note that discovery cannot be easily

4    bifurcated.  I mean, it is really easy, I believe, as you

5    indicated, to stand up here and say, oh, we can separate these

6    issues between discovery on the forum issues and discovery on

7    the broader merits discovery.  But this will be very difficult

8    to do in practice.

9           Plaintiffs do not agree that this is something that

10   can be easily disposed of in the time frame that defense

11   counsel indicated because it would be very difficult to

12   demarcate the individual witnesses, documents, pages of

13   individual documents that relates to one -- one overlapping

14   topic versus the other.

15          Plaintiffs will take multiple depositions on forum

16   selection.  We will pursue this claim vigorously.  We will seek

17   lots of documents, and many of them will overlap directly with

18   merits issues.

19          One example of this would be the substance and

20   adequacy of the allegedly binding terms and conditions that --

21   that's -- that document and communications regarding that

22   document all speak to both the -- the supposedly smaller forum

23   selection point and the larger merits issues at issue in this

24   case.

25          There are also many witnesses that overlap between

1  forum selection and merits issues, and plaintiffs will -- will

2  depose all of them.  We've listed several of those in -- in our

3  briefing, Christopher Pavlovski, Tyler Hughes, Michael Ellis.

4  There are other such individuals, and they will all have

5  information and communications that are relevant to both the

6  narrower forum selection issue and the broader merits issues.

7          Your Honor, because Rumble must go to the same

8  document and witness sources, there is truly no compelling

9  reason for bifurcation of discovery.  This will be inefficient.

10  It will be difficult for the parties to comply with.  And it is

11  really in the best interest of the parties and the Court for

12  discovery to proceed in the usual non-bifurcated fashion that I

13  will note both parties requested in the uniform case management

14  report that was filed late last year.

15          I also do want to speak quickly to Rumble's

16  contention that the forum selection argument is a threshold

17  issue in this case.  I will note that nowhere in Judge

18  Merryday's order did he -- denying Rumble's motion to dismiss

19  did he refer to forum selection as dispositive or threshold.

20  Instead, Your Honor, he denied their motion on both forum

21  selection and merits grounds.

22          He also did not refer to it as the pertinent issue as

23  compared to merits.  Rather, he used that phrase in correcting

24  the *forum non conveniens* mechanism that Rumble had used to try

25  to dismiss the case.  He suggested that a motion for improper

1  venue would be the better mechanism.  Regardless, the pertinent

2  issue, you know, between *forum non conveniens* or improper venue

3  remains the same, and he said the basis was clear.

4         I'll also note, Your Honor, on the second page of his

5  order, Judge Merryday wrote that the operation of Rumble,

6  Facebook pixel, and Facebook subscribers are disputed or

7  incomplete and not competently ascertainable on an undeveloped

8  record.  This is the exact undeveloped record that plaintiffs

9  have spent the last four months vigorously trying to develop.

10        And, Your Honor, truly, there's nothing in the text

11 of his order, read closely, or any part of this document that

12 warrants bifurcation.  As Your Honor correctly noted, Rumble's

13 motion to stay discovery was denied.  Judge Merryday affirmed

14 Rumble's objections to your order on that, and then he denied

15 the motion to dismiss on two separate grounds.

16        So for all those reasons, Your Honor, plaintiffs

17 request that the Court deny Rumble's motion for bifurcation of

18 discovery and enter one of the proposed non-bifurcated

19 schedules that the parties submitted in the uniform case

20 management report.

21        THE COURT:  And so -- so your concern, in terms of --

22 your burden in terms of not getting the discovery that you've

23 already asked for, in addition to the delay this would cause

24 your case, is that also it would require you to have to

25 redepose Rumble defendants or Rumble employees, I guess?

1          MS. CROWE:  Yes, Your Honor.  We will have to

2     redepose multiple Rumble defendants.  We will be seeking many

3     of the similar -- many similar documents across both issues.

4          It calls into question the -- the Facebook subpoena I

5     referenced that is very targeted towards the merits of this

6     case.  It calls into question all of the discovery requests

7     that we have been -- that we served late last year and that we

8     have been conferring on and proceeding vigorously over the past

9     few months.

10          I mean, all -- all of that work Rumble is -- is now

11     asking the Court to halt, and there's just no clear line

12     dividing the issues.

13          I mean, plaintiffs will certainly take multiple

14     depositions for -- of people who will speak to the corporate

15     structure, the organizational structure.

16          And, you know, if Rumble loses on the forum issue,

17     which is a high -- high likelihood of possibility, both

18     sides -- you know, the losing side will appeal to the Eleventh

19     Circuit, and that will take us back several months as well, if

20     not much longer.  And then we'll have to start discovery again

21     from scratch.

22          THE COURT:  And Mr. Dubinsky had mentioned that

23     these -- this is part of cases that are happening all across

24     the country.

25          Is your firm representing plaintiffs in the other

1   cases?

2         MS. CROWE:  Yes, Your Honor, we are.

3         THE COURT:  And has Facebook been responding to those

4   subpoenas, or have they been contesting them?

5         MS. CROWE:  We have not had a deadline pass yet in

6   any of our other cases.

7         THE COURT:  Okay.

8     (Unintelligible cross talk.)

9         MS. CROWE:  I would mention -- excuse me, Your Honor.

10        THE COURT:  No, no.  Go ahead.

11        MS. CROWE:  I will just mention that no other

12  defendant has moved to stay discovery in this fashion.

13        THE COURT:  Okay.  But does any other defendant have

14  the same venue issue?

15        MS. CROWE:  Not the exact same venue issue, but ...

16        THE COURT:  Okay.  And -- what I'm going to do is I'm

17  going to give Mr. Dubinsky an opportunity to respond, and then,

18  Ms. Crowe, I'll give you an opportunity to respond one last

19  time too.

20        MS. CROWE:  Okay.

21        THE COURT:  Go ahead, Mr. Dubinsky.

22        MR. DUBINSKY:  Thank you, Your Honor.

23        MS. CROWE:  Do you want to --

24        MR. DUBINSKY:  If you don't mind.

25        I can --

```
1          THE COURT:  Hold on one second.  Hold on.  I want to
2  look at one thing on the docket real fast.
3          MS. CROWE:  (Unintelligible.)
4          MR. DUBINSKY:  Okay.
5          THE COURT:  Hold on one second.  I want to look at
6  one thing on the docket.
7          I'm ready for you.  Go ahead.
8          MR. DUBINSKY:  Okay.  Thank you, Your Honor.
9          So I just want to start with my friend's discussion
10 of Judge Merryday's order, which I think really is quite
11 straightforward and speaks for itself.
12         So I really don't understand the basis for the
13 contention that the venue issue isn't outcome definitive or
14 dispositive.  That is, in fact, the very point of a venue
15 provision like the one we have here, is that the litigation has
16 to proceed, if at all, in the designated forum.
17         And that's reflected directly in Judge Merryday's
18 order.  He says that the argument for exclusive, i.e., not
19 shared, venue in Canada is formidable, and he said simply that
20 certain facts were not distinct so as to, quote, "permit
21 dismissal."
22         So I think that -- that's -- that really speaks for
23 itself.  I mean, I think what is pretty clear here is that the
24 judge contemplated that if we were correct, the case would need
25 to be dismissed in favor of Canada.
```

1      You know, as for the discussion of what the pertinent
2   issue is -- is a reference to, that, again, is, I think, very
3   clear.  It's in the paragraph discussing the right to exclusive
4   venue, and it's referring to the facts that are not
5   sufficiently distinct to permit dismissal.  And Judge Merryday
6   says very plainly that a motion after discovery directed to the
7   pertinent issue seems a more reliable mechanism to address the
8   venue challenge definitively.
9      So I think that -- you know, our position is that
10  we're tied to what -- we're reflecting what Judge Merryday has
11  instructed, which is this venue issue is one that, if we're
12  correct on and is resolved in our favor, would mandate
13  dismissal in favor of Canada and -- and that the best way to
14  proceed is to sort out what those facts are that are not yet
15  sufficiently distinct.
16     As to what those issues are and the issue of the
17  overlap, just to revisit what we discussed earlier, the three
18  issues the -- or the three buckets I see, at a broad level, are
19  whether the forum selection clause is valid and enforceable.
20  That has nothing to do with whether or not Rumble violated the
21  Video Privacy Protection Act by supposedly disclosing certain
22  personally protected information to Meta;
23     Whether Canadian law provides plaintiffs with a
24  remedy if the case were dismissed in favor of Canada.  Again,
25  that has nothing to do with whether or not we violated this

1  federal statute governing disclosures of certain information;

2          And, third, whether or not my client, Rumble Inc.,

3  the U.S.-based holding company for Rumble Canada Inc., can

4  invoke the forum selection clause in the terms and conditions,

5  which goes to certain arguments that we made in the motion to

6  dismiss papers about, under the law, are we closely related

7  enough to Rumble Canada to invoke it?  What is the exact nature

8  of the relationship between my client and Rumble Canada Inc.,

9  which is the party to the terms and conditions?

10          Those are very defined categories and targeted

11  categories.  And, again, our position is that we don't need

12  much on all of this to resolve this issue.  And it has nothing

13  to do whatsoever, in our view, with whether or not the use of

14  the Facebook pixel, you know, on the website, when certain

15  videos were watched, violated this federal statute passed in

16  the 1980s.  So it -- it's just hard to understand that -- that

17  contention.

18          So our view is, again, this is the most economical

19  way to proceed, as Your Honor indicated, in order to ensure

20  that massive resources aren't wasted, that very burdensome

21  discovery isn't taken that will ultimately -- for litigation

22  that ultimately would have to proceed in Canada.

23          It is simply the economical, efficient, and, frankly,

24  just way to proceed so -- to follow discovery in the fashion

25  we've requested.

1      I'm happy to take any questions that Your Honor has.

2      THE COURT:  I think you've answered the ones that I

3  did have already, when I was such a hot bench earlier, but I'm

4  going to give Ms. Crowe an opportunity to respond to what you

5  had to say.

6      MR. DUBINSKY:  Thank you so much.

7      THE COURT:  Thank you.

8      Go ahead, Ms. Crowe, whenever you're ready.

9      MS. CROWE:  Thank you.

10      Your Honor, I would first like to return to Judge

11  Merryday's order on the motion to dismiss.  It is true, Your

12  Honor, that he suggested that forum selection be resolved at

13  summary judgment.  He made the exact same comments on the

14  merits of plaintiffs' VPP claims on the very next page.

15      He says, Again, the merits of Rumble's claim appear

16  more susceptible to confident resolution on a motion for

17  summary judgment.  So taking Rumble's logic, we could -- and

18  suggested approach, we could bifurcate discovery and litigate

19  the merits of plaintiffs' claims first and then do the forum

20  selection.

21      Again, plaintiffs do not believe this is efficient

22  because these are very overlapping categories.  For example, in

23  litigating and connecting with the discovery on the forum

24  selection clause and whether or not it applies in this case,

25  whether or not the defendant, Rumble Inc., can invoke it here,

 1   we'll inevitably be conducting discovery on the corporate

 2   structure, the organizational structure, and the very

 3   operations of the U.S. entity Rumble Inc. that is headquartered

 4   in this district.

 5           All of that will be necessary to answer the forum

 6   selection issue and also overlaps with merits discovery.

 7           Rumble's argument that the -- Rumble's argument that

 8   a third -- or another section of discovery that will be

 9   necessary for forum selection is whether the Canadian law

10   provides a remedy for plaintiffs, that's an -- that is an

11   answer -- or that is a question that will have to be answered

12   on the motion to dismiss regarding -- or, excuse me, the motion

13   for summary judgment on forum selection.  That also gets into

14   the merits of plaintiffs' VPPA claims.

15           Whether plaintiffs have a remedy for their injuries

16   under Canadian law, that is tied in to the very merits of their

17   claims that they are trying to prosecute in the very district

18   that Rumble is headquartered in.

19           So, Your Honor, I will just repeat that they are

20   overlapping categories.  They are not distinct.  The issues are

21   very intertwined and interrelated, and plaintiffs have been

22   vigorously pursuing this merits discovery that Judge Merryday

23   wants to see a summary judgment motion on for the past four

24   months.

25           Halting all of that now, especially in light of the

1    Facebook subpoena that is currently pending, will just further

2    delay this -- this action and create a lot of inefficiencies

3    for the Court.

4              Thank you.

5              THE COURT:  Thank you.  Let me just look over my

6    notes.  I'm just going to look back here.

7              Okay.  I'm going to grant the motion to the extent

8    that I am going to -- and, again, I'm using the term front-load

9    because I don't think it's as clean as being able to -- sort of

10   as bifurcate, but to front-load the discovery on the venue

11   issue.

12             Specifically, I'm going to grant the motion to allow

13   discovery of evidence that's directly probative of venue.  So

14   that's the sort of scope that you'll be dealing with.

15             I'm going to permit this for the next 90 days, and

16   what we're going to do -- let's see.  Do you-all -- were you

17   able to bring your cell phones into the courthouse?

18             MR. DUBINSKY:  I was not, Your Honor.

19             THE COURT:  Okay.  Ms. Crowe, do you have yours?  You

20   probably weren't able to --

21             MS. CROWE:  Yes, Your Honor.

22             THE COURT:  Oh, you were able to.  Okay.

23             Let's see.  We'll talk about some dates.  If these

24   end up being problematic, we'll at least be able to clear them

25   for Ms. Crowe.

1       And then, Mr. Dubinsky, obviously if you know you

2  have a vacation or something scheduled, let's address that now.

3       MR. DUBINSKY:  Thank you, Your Honor.

4       THE COURT:  Otherwise, you can work out a sort of

5  other date with Ms. Crowe and get back to me.

6       So let's see.  Today's the 18th [verbatim].  Just to

7  make it easy -- let me look at my calendar the week of the 17th

8  of July.

9       And I'm doing 90 days for a couple of reasons.  One,

10 that gives enough time -- obviously, it gives plaintiffs more

11 of an opportunity to think about the discovery too.

12      I appreciate that defendants have an expert on this

13 Canadian law issue, but I don't want to expect at this point

14 that plaintiffs already do.  They may, but I don't want to

15 require that of them.

16      So that week I am pretty much wide open at this

17 point.  Ms. Crowe, are you available -- and to be clear, this

18 does not have to be an in-person hearing.  This could also be

19 by Zoom, if that's the pleasure.  Coming to Florida in April is

20 a little more attractive than coming in July.

21      But if you do think you're going to come, we can also

22 do the hearing closer to a weekend so you can avail yourself of

23 the beaches if you'd like.  But right now, I'm pretty much open

24 that -- that entire week.

25      So, Ms. Crowe, if you want to pick a day, if you-all

1    want to talk and come up with a day and time that works after

2    Mr. Dubinsky can look at his calendar, I'm fine with that too.

3    The idea would be giving you-all 90 days, three months, to

4    basically knock out this discovery.

5         Because we'd be setting the next status conference,

6    that also enables you-all to be able to -- to have a time and

7    date on your calendar that you know you can address any issues

8    with me if there's been some issues with that.

9         The Facebook subpoena, we can address those then.

10   And then also it does seem like -- and that's why I wanted to

11   look back at your case management report -- by building in

12   these 90 days, it is going to disrupt your case management

13   report deadlines.  I also appreciate those were done back in

14   November, before you had the benefit of Judge Merryday's order.

15        So it may make sense also, at that July date, that I

16   set a deadline for amending your case management report instead

17   of having Judge Merryday enter a case management and scheduling

18   order, at least on the currently submitted deadlines.

19        So you tell me.  Ms. Crowe, if you'd like to go ahead

20   and pick a date and time that we can aim for that week, you

21   could do that.  Otherwise, if you want to talk to Mr. Dubinsky

22   after the hearing, when he has the benefit of his phone, and

23   pick a date and time that week, that's fine too.

24        MS. CROWE:  We can talk after the hearing and select

25   a date that works for both of us, but we'll -- we'll plan for

1    it to be that week, the 17th.

2         THE COURT:  Okay.  And all you have to do -- I

3    believe my law clerk Ms. Eisenhut was who had emailed you about

4    getting the date scheduled for this.  So just shoot her an

5    email back letting her know whether you want to do it by Zoom

6    or in person and what day and what time.

7         If hearings have been added to the calendar in the

8    interim -- which I don't expect, but if that has happened,

9    she'll be able to let you know that the time frame's narrowed.

10   Otherwise, I find it to be pretty seamless.

11        When I was in private practice, I hated having dates

12   unilaterally set by courts.  It was probably one of my least

13   favorite things about federal court, so I really try to not do

14   that as much as possible.

15        MR. DUBINSKY:  Thank you, Your Honor.

16        THE COURT:  So, again, the motion's going to be --

17   and I'm granting it to the extent that we had the hearing and

18   also to allow discovery of evidence that is directly probative

19   of this venue issue.

20        I'm not bifurcating discovery.  I worry that would --

21   I don't know that you really can bifurcate discovery.  Plus I

22   worry that that would just invite more motions.

23        The instructions are allowing discovery of evidence

24   directly probative of venue, so I'm reading exactly what I

25   wrote, which will now end up in my orders too.  So allowing

1  discovery of evidence that's directly probative of venue.

2            MR. DUBINSKY:  Thank you, Your Honor.

3            THE COURT:  And to be clear, I am going to require

4  that the -- any time that you've spent deposing the plaintiffs

5  on the issues of the terms and conditions, that that will

6  later, in the merits discovery, if this case gets to that

7  point, that that would be carved out from the seven hours.

8            I am not going to be as restrictive with plaintiffs.

9  Of course, that's not intended to invite any type of -- of

10  abuse, but to the extent that -- really, it seems to me, from

11  what I'm hearing both sides say, we're talking about 30(b)(6)

12  depositions of the Rumble individuals, which don't really have

13  a timeline so much on them anyway.

14            But I'm not going to be as restrictive, where we're

15  counting the minutes, for any depositions that the plaintiffs

16  are having to take of Rumble individuals with regard to the --

17  to the venue versus later facts discovery issue.  But to be

18  clear, it's still that scope of discovery of evidence directly

19  probative of venue.

20            Does anybody have questions about those parameters

21  I've just put on things?

22            Anything, Mr. Dubinsky?

23            MR. DUBINSKY:  No, Your Honor.  Thank you very much.

24            THE COURT:  Ms. Crowe, any questions about that?

25            MS. CROWE:  No, Your Honor.

1       THE COURT:  Okay.  So, again, we are -- we'll be

2  getting a written order out.  The goal is to have a follow-up

3  discovery conference the week of July 17th, and that can either

4  be by Zoom or in person, depending on what you-all request.

5       You're going to email Ms. Eisenhut with what date and

6  time you would like to have that week and then also the format

7  for the hearing.

8       Anything else, from plaintiff's perspective, that we

9  can address today, Ms. Crowe?

10      MS. CROWE:  No, Your Honor.

11      THE COURT:  Anything else, Mr. Dubinsky?

12      MR. DUBINSKY:  So just to be clear, I take it from

13  our discussion earlier that on the issue of the successive

14  motions for summary judgment, we should take that up with Judge

15  Merryday and ...

16      THE COURT:  So what I'm trying to -- you know, so --

17  well, let me think about that.

18      I don't think it hurts to file a motion asking for

19  that, asking that you be specifically permitted to file a

20  motion.  I mean, my thought too is when we have this discovery

21  conference in 90 days -- I mean, I'll just tell you my

22  recommendation to his chambers is going to be hold off on

23  entering a case management and scheduling order.

24      And that's because I don't know that -- based on my

25  ruling today, that your -- that the dates in the case

1　management report really make sense.

2　　　　　　MR. DUBINSKY:  Right.

3　　　　　　THE COURT:  So I am going to have Ms. Eisenhut reach

4　out to Judge Merryday's law clerk and just say, "Look, rather

5　than entering a case management and scheduling order, note the

6　order we just did giving them 90 days of discovery."  So I

7　don't expect you'll have a case management and scheduling

8　order.

9　　　　　　So I think we could probably address that at the

10　status conference in three months.  I know that I'll -- I know

11　that's an issue now, so I can raise it in advance and see if I

12　have the discretion to entertain that.

13　　　　　　Probably the best thing for you to do, though, just

14　to be sure that you can proceed in that way in terms of

15　motions, would be to file a motion asking him, and that also

16　gives, then, the plaintiffs an opportunity to respond to it in

17　writing as well.

18　　　　　　MR. DUBINSKY:  Thank you, Your Honor.

19　　　　　　THE COURT:  And if you've done that -- if you do that

20　sooner rather than later, we'll all go into the discovery

21　conference knowing what you're facing in terms of your briefing

22　rights.

23　　　　　　MR. DUBINSKY:  Understood.  That makes sense to us.

24　　　　　　THE COURT:  And he may, frankly -- and I don't know.

25　I mean, I -- I don't have any hidden knowledge about this.

1     One thing I could see Judge Merryday do is perhaps

2  letting you file a motion for summary judgment on venue but not

3  giving you the full 25 pages, for example, maybe having it be a

4  shorter motion.

5     So if that's something that you think can be a

6  shorter motion, perhaps you want to even put that in your

7  motion -- I'm not sure -- or in your discussions, your

8  meet-and-confer discussions with Ms. Crowe, address that.

9     But, again, the typical case in this district only

10  has one motion for summary judgment, but I -- you know, this

11  does not seem to be the typical case so far.

12     MR. DUBINSKY:  Thank you, Your Honor.  That -- that

13  all makes sense to us.

14     THE COURT:  But, again, it's not -- not my decision

15  to make at this point.

16     And, Ms. Crowe, did you want to say anything?

17     MS. CROWE:  Yes, Your Honor.  May I ask one

18  additional question?

19     THE COURT:  Of course.

20     MS. CROWE:  We just will need to serve additional

21  discovery requests now targeted to the forum issue, so I just

22  wanted to seek permission to do that.

23     THE COURT:  Yes.  And this is -- this is full --

24  fully permitting both sides to conduct discovery on the next 90

25  days on that -- let me read my language again so I don't mess

1   up the record.  The issue that -- let's see.  Discovery of

2   evidence directly probative of venue.  So, yes, that --

3   plaintiffs can serve discovery specific to that issue, as can

4   defendants.

5           Well, and let me ask.  Because you've been given this

6   90-day window, that does seem to allow the regular turn-around

7   time of 30 days, but we can also expedite responses to those

8   and have it be a shorter time frame if you-all think that's

9   necessary to have this discovery completed by that next status

10  conference.

11          MR. DUBINSKY:  I'm -- that is totally fine by us.

12  We've -- as I had mentioned earlier, we have prepared requests

13  going to the forum issue.  I mean, if you want to reduce, you

14  know, the 30 days to 20 days, or frankly even 15 days, we're --

15  we're willing to do that.

16          THE COURT:  Well, what do you think, Ms. Crowe?

17  Would you want responses to be faster than the typical 30 days?

18          MS. CROWE:  Yes, Your Honor.  We can do faster than

19  the typical 30 days.

20          THE COURT:  And how long ago did -- did defendant

21  serve their -- or did Rumble serve their discovery requests to

22  you?  I don't -- I mean, I don't want to --

23          MS. CROWE:  Yesterday.

24          THE COURT:  Oh, okay.  So let's -- so for anything

25  that's already served -- so that was the 17th [verbatim].  So

 1   let's say 21 days for that, just because you're already sort of

 2   partway into the 14 days if I really shorten that.

 3          So the response -- the written responses would need

 4   to be -- and then any documents would need to be 21 days, so by

 5   May 8th, assuming that they were served on April 17th.

 6          But any discovery served after today -- so starting

 7   after the hearing today, any discovery served, the response

 8   time frame, let's say 14 days.

 9          MR. DUBINSKY:  Your Honor, if I -- if I could object

10   slightly to that disparity.  And -- and the discovery was

11   served just -- there's not even (unintelligible) to indicate

12   that it occurred yesterday, so (unintelligible) to be longer

13   than 30 days.

14          I do think that a seven-day disparity between sides

15   seems not to correspond to that.

16          THE COURT:  Well, I was thinking maybe you were going

17   to send out more discovery requests, so it was going to be 14

18   days for everybody.  I mean, I'm fine with making it 21 days.

19   I'm just trying to have you-all expedite it so that you can get

20   this case moving.

21          MR. DUBINSKY:  I'm fine also with the 14 as long as

22   it's -- you know, I think at this moment -- although

23   obviously -- I'd obviously like to propound further discovery

24   requests, but as of this moment the requests we propounded were

25   fairly comprehensive.

1         And so I don't want to say that's the sum total of

2 the discovery (unintelligible), but it is a -- it is a large

3 amount of it, so I -- I just (unintelligible) a little bit

4 about ...

5         THE COURT:  Okay.  Well, if it's going to be 14 days,

6 then I'm going to give them 14 days from tomorrow, so that that

7 way they have --

8         MR. DUBINSKY:  That's fine.

9         THE COURT:  Because they're -- they didn't know it

10 was going to be 14 days until a few minutes ago.

11         MR. DUBINSKY:  That's fine by us, Your Honor.  Thank

12 you.

13         THE COURT:  And, Ms. Crowe, do you have any objection

14 to that?

15         MS. CROWE:  No, Your Honor, though I did want to ask

16 if there is a deadline for submitting expert reports on the --

17 the forum selection issues.

18         THE COURT:  That's a good point to raise.  So let's

19 do this.  I want to make sure this is all in the docket.  So

20 let's -- I'm going to do a joint motion for expedited written

21 discovery responses on the venue issue, and I'm going to grant

22 that and require a 14-day turn-around time.

23         So any discovery that's already been served as of

24 today has to have responses by the 4th of May.  Otherwise it's

25 14 days from the date of service.

1        And then in terms of experts, it sounds like you

2  already have -- the defendants have identified their expert on

3  this issue.

4        How long, Ms. Crowe, would you need to identify an

5  expert for plaintiffs?

6        MS. CROWE:  Just a week.

7        THE COURT:  Well, gosh.  You're -- you're being

8  harder on yourself than I was going to be.

9        Let's -- to keep deadlines simple, let's stick with

10  May 4th.  That way it's consistent with the other date I've

11  already stated.  We don't want to end up with a lot of dates in

12  the order.

13        MR. DUBINSKY:  I'm sorry, Your Honor.  I'm sorry to

14  interrupt.

15        Is that May 4 to submit opening expert reports, or is

16  that May 4 to -- for disclosures (unintelligible), or is

17  that --

18        THE COURT:  No.  Let's make May 4th for disclosures.

19  And then how quickly -- I would expect, Mr. Dubinsky, that

20  you -- your expert, who's already done an affidavit, wouldn't

21  need too much more time for a report.

22        How much more time would your expert need?  And I'll

23  ask Ms. Crowe also.

24        MR. DUBINSKY:  The only wrinkle is that our expert

25  has some travel.  I just want to make sure that the -- I

1  think -- I think May 4 will be okay, but I just want to confirm

2  that and --

3       THE COURT:  Well, I can give him more time for his

4  report.

5       MR. DUBINSKY:  Okay.

6       THE COURT:  Ms. Crowe, how quickly do you think your

7  expert can get their report out?

8       MS. CROWE:  So -- just so I make sure I understand

9  Your Honor, so May 4th is the expert disclosure deadline?

10      THE COURT:  For your disclosure.

11      MS. CROWE:  Then we'd need 30 days from that point.

12      THE COURT:  So you would want till, let's say, June

13 2nd, just to throw a date on it?

14      MR. DUBINSKY:  That works for us as well, June 2nd

15 for an -- for an expert report.

16      THE COURT:  So let's say May 4th to disclose experts.

17      And that, Mr. Dubinsky, gives you the opportunity, if

18 you're wanting to switch out experts, you can switch out

19 experts between now and May 4th.

20      MR. DUBINSKY:  Thank you, Your Honor.

21      THE COURT:  So May 14th is your -- is the disclosure

22 deadline for the expert on this venue issue, and then June 2nd

23 is the deadline for reports.

24      And I will -- will docket this, just so the record's

25 clear, as a joint oral motion for -- for deadlines to disclose

1    experts and the reports on the venue issue.

2              MS. CROWE:  Your Honor, I just had one other point --

3              THE COURT:  Sure.

4              MS. CROWE:  -- to make or question to ask.

5              We'd like to stipulate that the -- we'll make the

6    experts, the respective experts, available for deposition

7    informally so we don't have to go through foreign service of

8    process through Canada.

9              THE COURT:  And any objection to that, Mr. Dubinsky?

10             MR. DUBINSKY:  No.  We'll have the expert available

11   for deposition.

12             THE COURT:  Okay.

13             MR. DUBINSKY:  Is there a day -- do you want to set a

14   timeline for that, or hopefully we'll just work it out amongst

15   the parties?

16             THE COURT:  I think you-all can work that out.  I

17   mean, you'll have the reports by June 2nd, so that gives you

18   really at least that whole month, or even longer.  But that

19   should give plenty of time.  I appreciate that it's summer, but

20   that would give you-all plenty of time to work that out.

21             Let's go ahead -- do we need -- do you want a paper

22   with an order that both sides are required to -- to provide

23   their experts for depositions?

24             MR. DUBINSKY:  Yes.

25             THE COURT:  Okay.  That way you can show that to your

1  expert and say that they can't be difficult.

2  Okay.  So we'll also do a joint oral motion for the

3  Court to decide how the experts should be produced.  I'll

4  wordsmith better between now and when we put it on the docket.

5  I'm trying to do it in such a way that the experts, if they

6  look at it, don't feel like you gave them up easily.

7  But the motion will be granted, and each side is

8  required to produce its expert for the deposition, through an

9  appropriately noticed deposition.  That will sound better when

10  it's on the docket, I promise you.

11  Ms. Crowe, you're on a roll with issue spotting.

12  Anything else you need that is not --

13  MS. CROWE:  No, Your Honor.

14  THE COURT:  Okay.  Anything else, Mr. Dubinsky?

15  MR. DUBINSKY:  Not -- not from our end at this time.

16  Thank you, Your Honor.

17  THE COURT:  Okay.  Well, and I will tell you, it's a

18  pleasure dealing with attorneys that at least seem to be

19  getting along on a discovery matter.  So -- you-all at least

20  are pleasant, seems like, towards each other and pleasant to

21  work with.

22  I don't know if you really are his friend, Ms. Crowe,

23  but he keeps calling you his friend to me.  By the end of the

24  case, you will be.

25  And I will look forward to seeing you-all in July,

1  whenever that is.  But, again, just let Ms. Eisenhut know as
2  soon as you can what day and what time you want to have that
3  hearing and how -- the format you want to have it.
4         In the meantime, we will reach out to Judge
5  Merryday's chambers just to give them a heads-up that this
6  order's coming, the minutes are coming, and that it probably
7  makes sense to hold off on a scheduling order until we've had
8  that -- that hearing in July.
9         Okay.  Thank you.
10        MR. DUBINSKY:  Thank you, Your Honor.
11        MS. CROWE:  Thank you, Your Honor.
12        THE COURT:  We're in recess.
13    (The proceedings were concluded at 11:17 a.m.)
14                          -  -  -
15
16
17
18
19
20
21
22
23
24
25

48

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4    UNITED STATES DISTRICT COURT )

5    MIDDLE DISTRICT OF FLORIDA    )

6

7            I, court approved transcriber, certify that the

8    foregoing is a correct transcript from the official electronic

9    sound recording of the proceedings in the above-entitled

10   matter.

11

12           DATED this 27th day of April, 2022.

13

14                              s/Shelli Kozachenko_____
                                Shelli Kozachenko, RPR, CRR, CRC
15                              Official Court Reporter

16

17

18

19

20

21

22

23

24

25