## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| JAMES BUECHLER and JESSE MARTINEZ, on behalf of themselves and all others similarly situated, | Case No. 8:22-cv-02237-SDM-AAS |
| Plaintiffs, | |
| v. | |
| RUMBLE INC., | |
| Defendant. | |

## DEFENDANT'S MOTION FOR SANCTIONS
## AGAINST PLAINTIFF JAMES BUECHLER, OR, IN THE
## <u>ALTERNATIVE, TO COMPEL DOCUMENT PRODUCTION</u>

Plaintiff James Buechler has evidently doctored evidence, committed perjury, and spoliated evidence central to his claims in this case.  In light of this gross abuse of the judicial process, Defendant Rumble Inc. ("Rumble") hereby moves the Court to impose sanctions against Mr. Buechler pursuant to this Court's inherent powers, Federal Rule of Civil Procedure 37, and any other applicable rules, statutes, or regulations.

## BACKGROUND

### A.    Plaintiffs sue in the wrong forum.

Plaintiffs filed this lawsuit on September 29, 2022,[1] alleging that Mr. Buechler and his co-plaintiff used their smart phones and other devices to access video content on rumble.com.  Compl. ¶¶ 12, 14.  At all relevant times, however, rumble.com's Terms and Conditions have contained a forum-selection clause mandating that any claims "arising out of or relating to" the Terms of Use or the use of "the Rumble Services" must be brought in Ontario, Canada.  *See* ECF No. 30 at 5.  Accordingly, on November 23, 2022, Rumble moved to dismiss this case in favor of the courts of Ontario.  *See id.*

On March 13, 2023, the Court observed that "the argument for exclusive venue in Canada is formidable" but declined to dismiss on the basis that "certain facts are insufficiently distinct."  ECF No. 54 at 1.  Because the Court suggested that Rumble could move again on the forum issue "after discovery directed to the pertinent issue," Rumble sought and obtained an order limiting discovery to forum-related issues for a period of 90 days.  ECF No. 65.

### B.    Mr. Buechler produces an altered document.

As part of the forum-related discovery the Court ordered, Plaintiffs' counsel produced two emails from Mr. Buechler's files.  One of the emails

---

[1] The lawyers who filed this case appear to have brought other VPPA suits as part of the wave of such suits being brought across the country.  *See* ECF No. 67 (Apr. 19, 2023 Tr.) at 25:22 −26:2 (THE COURT: "Is your firm representing plaintiffs in the other [VPPA] cases? MS. CROWE: Yes, Your Honor, we are.").

Plaintiffs' counsel produced presents as an email from rumble.com to Mr. Buechler, bearing the date of January 21, 2022; the email provides a link for Mr. Buechler to activate his rumble.com account (the "Altered Email") (attached as Exhibit 1 to the declaration of Gregory Dubinsky ("Dubinsky Decl."), submitted herewith).

The Altered Email is all but certainly doctored to reflect the January 21, 2022 date.  Internal company files reveal that Mr. Buechler actually signed up for his rumble.com account on September 23, 2022—a mere six days before he commenced this litigation—but Mr. Buechler did not produce any activation email from September 2022.  *See* Dubinsky Decl., Ex. 2 (Buechler user file document).  And, critically, as Rumble's Chief Technology Officer, Wojciech Hlibowicki explains in an accompanying declaration, ("Hlibowicki Decl.") at ¶¶ 4-5, the Altered Email could not have been sent in January 2022, because the activation email format reflected in the Altered Email was not implemented by rumble.com until ***April*** 2022.  *Id.*, ¶ 6 ("[T]he form of the link in [the Altered Email] indicates that the email was sent, if it was sent, after April 5, 2022.").

Consistent with its records, Rumble indicated in its Answer, filed in March 2023, that "Plaintiff James Buechler has had an account on rumble.com since September 23, 2022," Answer, ECF No. 56, ¶ 84, and Rumble produced to Plaintiffs during discovery an internal record in advance of Mr. Buechler's deposition showing that Mr. Buechler created his rumble.com account on September 23, 2022.  Dubinsky Decl., Ex. 2.

### C.  Buechler falsely testifies that he received the Altered Email and created his rumble.com account in January 2022.

Rumble deposed Mr. Buechler on July 11, 2023.  During that deposition, Mr. Buechler swore under oath several times that he received an activation email and signed up for rumble.com in January 2022—the date reflected on the Altered Email.[2]  *See* Dubinsky Decl., Ex. 3 (Buechler Trans.) at 21:4–9, 38:19–22, 146:25–147:2.  When confronted with rumble.com internal records showing Mr. Buechler registered for his account on September 23, 2022—and the software code change showing that the Altered Email could not have been sent before April 2022—Mr. Buechler could not explain the discrepancy.  *Id.* at 143.

At his deposition, Mr. Buechler swore that he had not doctored the Altered Email, that the Altered Email was still in his inbox, that he "did not delete anything" in terms of email, and that he would commit to producing a native version of the Altered Email.[3]  *Id.* at 157:8–14, 44:17–24, 157:15–18.  He also testified that the Altered Email, if retrieved from his email inbox, would contain the January 21, 2022 date.  *Id.* at 157:8–14.  To the extent there could be any

---

[2] It is unknown at this time why Mr. Buechler apparently chose to backdate the Altered Email and to dissemble about it.  However, he testified at deposition that he decided to sue Rumble after seeing an online survey from Plaintiffs' counsel on social media.  Dubinsky Decl., Ex. 3 at 18:24-19:6.  Given that internal records show that Mr. Buechler created his account a mere *six days* before the Complaint was filed, one plausible explanation is that he created his rumble.com account solely for the purpose of suing Rumble and only *after* he saw the survey—and sought to create the impression that he had actually been a rumble.com user for months before Plaintiffs' counsel began soliciting clients to sue Rumble.  This would be in line with Mr. Buechler's history as a serial plaintiff and past claims that he doctored evidence.  *See infra* at 5, 8.

[3] As the Court knows, a "native" email means the original email as it exists on Mr. Buechler's device; as produced, the Altered Email was simply an image file that apparently was created from a PDF.

innocent explanation for the discrepancy in registration dates, that native email would likely shed light on the issue.

Further, and notably, Mr. Buechler denied under oath in his deposition that he had ever been previously accused of fraudulent conduct in litigation. *Id.* at 147:10–12. Only after counsel for Rumble confronted Mr. Buechler with an opinion by a federal court (a case in which he was a plaintiff) recounting that Mr. Buechler had indeed been accused of doctoring evidence in that case, *see Buechler v. Best Gaming, Inc.*, 2013 WL 1830079, at *1 (D. Md. Apr. 30, 2013), Mr. Buechler was forced to concede that he had, in fact, been "accused of altering documents in the past." Dubinsky Decl., Ex. 3 at 153:14-21. And Mr. Buechler indicated that "it wouldn't surprise me if somebody else" were to accuse him of "doctoring evidence in other cases." *Id.* at 156:4-18.

### D. Following the deposition, Plaintiffs' counsel informs Rumble that Mr. Buechler will not provide the native version of the Altered Email and that Mr. Buechler suddenly wishes to dismiss his lawsuit.

Following Mr. Buechler's deposition, counsel for Rumble promptly raised with Mr. Buechler's counsel the grave concerns arising from Mr. Buechler's testimony and the date of the Altered Email. Rumble asked Plaintiffs' counsel to produce a native version of the Altered Email by July 17, 2023. Six days after the deposition, on July 17, Plaintiffs' counsel stated that they were "in the process of investigating," but they failed to explain why it required a week (or longer) to obtain and produce a single e-mail that their client claimed (under oath) existed on his phone and that he committed to produce. Dubinsky Decl., Ex. 4. Nor did

they explain why they did not previously investigate the discrepancy between (i) the date of Mr. Buechler's activation email and (ii) the date Rumble's Answer gave for Mr. Buechler's account creation as well as (iii) the user data Rumble produced bearing the same September 2022 date.

Two days later, on July 19, Plaintiffs' counsel stated that they had "endeavored over the past week to collect the native version of that email to produce to Rumble.  Despite those efforts, Mr. Buechler has not provided the native version of the email, so we are unable to provide it to Rumble."  Dubinsky Decl., Ex. 5.  Plaintiffs' counsel also informed Rumble in the same message that "Mr. Buechler has asked . . . to have his claims against Rumble dismissed"; in that email, Plaintiffs' counsel offered a stipulation only for dismissal without prejudice and, incredibly, on the condition that Mr. Buechler remain a member of the putative class.  *Id.*

Remarkably, during a recent meet-and-confer—well after these issues had surfaced, counsel for both parties exchanged correspondence, and Plaintiffs' counsel said they had "investigat[ed]"—Plaintiffs' counsel informed counsel for Rumble that they take "no position" on whether Mr. Buechler doctored the email.

### E.    Buechler spoliated evidence.

In addition to apparently producing an altered document and perjuring himself, Mr. Buechler admitted to destroying evidence.  In the Complaint, Plaintiffs plead that Mr. Buechler "used a . . . smart phone to access streaming video content" on rumble.com.  Compl. ¶ 12.  Moreover, at his deposition, Mr.

Buechler testified that he had used the Rumble mobile application to access his rumble.com account.  However, he subsequently testified that the rumble.com application (and presumably its data) no longer exists on the same phone he had installed it on.  Dubinsky Decl., Ex. 3 at 55:3–6, 55:13–22 ("It is not on my phone.").

Mr. Buechler also stated that he never made his phone available for review by his lawyers and that his lawyers similarly did not obtain his phone from him. *See* Ex. 3 at 54:2–7 ("I haven't downloaded my phone to them").  What is more, he understood that he did not need to preserve the data on his phone—*i.e.*, the device he purportedly used to watch rumble.com videos.  *Id*. at 59:19-21 ("When they told me to preserve documents, I assumed that would be e-mails, correspondence.").  Thus, Mr. Buechler's explanation for why the Rumble application is no longer on his phone was: "If I wanted to get rid of it, ***I would have deleted it*** because I don't think that would be a document or anything like that . . . ."  Dubinsky Decl., Ex. 3 at 59:19–25 (emphasis added).

As discussed *infra*, the failure to preserve data on Mr. Buechler's phone is a breach of the parties' Stipulation Regarding the Production of Electronically Stored Information and Hard Copy Documents (the "ESI Stipulation"), ECF No. 53.  In the ESI Stipulation, Mr. Buechler agreed through his counsel that "any device that Plaintiffs used to access Rumble or Facebook will be preserved."  ESI Stip. ¶ 5(f).  Evidently, that did not happen.

### F.      Buechler's history as a serial litigant.

Mr. Buechler is no stranger to the litigation process.  Indeed, he appears to have been a plaintiff in some 40 other cases—despite falsely claiming at his deposition that he had been involved in only approximately 10 other cases.  *See* Dubinsky Decl., Ex. 3 at 14:15–19.  As noted, Mr. Buechler also falsely denied that he had ever been accused of fraudulent conduct in the past—until confronted with a federal court opinion stating as much.  *Id*. at 147:10–12; *see Best Gaming, Inc.*, 2013 WL 1830079, at *1 (reciting that Buechler was "accused of fraudulent conduct"—including "'photo-shopp[ing]'" "pictures" he submitted in support of his claim).

## ARGUMENT

## I.      Mr. Buechler Should Be Sanctioned.

It is well-established that federal courts have the "inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions."  *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (quoting *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993)); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991).  This Court's inherent power to sanction is "broader" than other sanctions regimes, in the sense that, "[w]hile the other sanction mechanisms only reach certain individuals or conduct, 'the inherent power extends to a full range of litigation abuses' and 'must continue to exist to fill in the interstices.'"  *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting

*Chambers*, 501 U.S. at 46).  Accordingly, sanctions against Mr. Buechler for his misconduct can and should be imposed under the Court's inherent authority.

### A.   Sanctions Are Plainly Warranted for Mr. Buechler's Apparent Doctoring of Evidence and Perjury.

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted).  "Bad faith"—including subjective bad faith—"exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (citing *Chambers*, 501 U.S. at 46); *see Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993) (affirming district court's ability to sanction under its inherent powers).  Here, clear-and-convincing evidence of Mr. Buechler's bad faith exists in spades.

***First***, all available evidence points to the undeniable conclusion that Mr. Buechler doctored the Altered Email—one of just two documents his counsel produced from his files.  As noted above, the Altered Email purports to show that Mr. Buechler sought to activate a rumble.com account on January 21, 2022. Dubinsky Decl., Ex. 3 at 42:18-24.  And Mr. Buechler testified he received the Altered Email on January 21, 2022 and created his account contemporaneously. *Id.* at 38:17–39:10.  But internal company files in Rumble's possession show that Mr. Buechler activated his rumble.com account on September 23, 2023—just six

days before this litigation was filed.  *See* Dubinsky Decl., Ex. 2.  Notably, Mr.

Buechler did not produce any rumble.com activation email sent in September

2022.

What is more, and critically, the conclusion that Mr. Buechler backdated

the Altered Email is further compelled by the fact that the Altered Email could

not have been sent before April 5, 2022.  As Rumble's CTO has explained,

Rumble implemented a change in the format of activation emails in April 2022,

and the Altered Email contains the format that came into existence only ***after***

April 2022.  Hlibowicki Decl., ¶¶ 3-6.  Mr. Buechler has offered no explanation

that could account for why the Altered Email bears a post-April format but a

January date, and we are unable to conjure any plausible explanation aside from

Mr. Buechler's alteration of the document.

***Second***, when given the opportunity to address these issues, Mr. Buechler

doubled down on his deception by apparently perjuring himself during his

deposition.  Mr. Buechler swore under oath, multiple times, that he received the

Altered Email in January 2022.  *See* Dubinsky Decl., Ex. 3 at 21:4–9, 38:19–22,

146:25–147:2.  He continued to insist that that he received the Altered Email in

January 2022 even when confronted with the internal records and code change

showing that the Altered Email could not have been sent before April 2022.  *Id.* at

143:3-21; Dubinsky Decl., Ex. 6; Hlibowicki Decl. at ¶¶ 3-5.  As noted, he offered

no explanation for any of the discrepancies between the Altered Email and the

evidence showing that the Altered Email could not have been sent in January 2022 and that he created his rumble.com account in September 2022.

Further, Mr. Buechler testified that he was still in possession of the original Altered Email in his inbox—which he swore would contain the January 21, 2022 date—and also committed that he would produce the Altered Email in its native format to Rumble's counsel.  *Id.* at 157:8–14, 44:17–24, 157:15–18.  However, Mr. Buechler refused to follow through with that promise.  His counsel later reported to Rumble that they apparently "endeavored . . . to collect the native version of that email to produce to Rumble," and that "[d]espite those efforts, Mr. Buechler has not provided the native version of the email, so we are unable to provide it to Rumble."  Dubinsky Decl., Ex. 5.  The only plausible conclusion is that the Altered Email is either destroyed or, if accessed in its native format, would not bear the January 2022 date as it was produced to Rumble.

Critically, if there had been some innocent explanation for all of this, the native file could well reveal it, and in that scenario this motion would not have been necessary.  But it bears emphasizing that Mr. Buechler has (1) refused to produce the native version of the Altered Email; (2) refused to offer any explanation for the discrepancies between his testimony, the Altered Email's date, and Rumble's internal records reflecting the September 2022 account creation date; and (3) absent any explanation, asked to withdraw his claims against Rumble and exit the case.

Taken together, the circumstances permit only one plausible inference: Mr. Buechler changed the date on the Altered Email to suggest that he signed up for rumble.com in January 2022—seemingly to conceal the fact that he actually signed up for rumble.com on September 23, 2022, *i.e.*, six days before filing suit. That in turn indicates that Mr. Buechler almost certainly signed up for rumble.com only to sue Rumble and may well not have even viewed any videos on rumble.com. And the still-further inescapable conclusion is that *if* a native version of the Altered Email does exist, it would bear a different date than the version Mr. Buechler produced through his counsel. That is no doubt why Mr. Buechler abruptly sought to withdraw from this action after his deception was revealed—and why his counsel seeks to cease representing him.

Mr. Buechler's misdeeds amount to a textbook case of sanctionable conduct. *See Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007) ("the inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence"). In nearly identical circumstances, courts in this Circuit and others have not hesitated to impose sanctions under their inherent power. *See, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2020 WL 2308319, at *4, *9 (N.D. Ala. May 8, 2020) (imposing sanctions based on defendants' bad faith in "doctoring . . . evidence and committing perjury," finding that this kind of "attempt to conceal or misrepresent the truth" . . . 'emasculate[s] the court's ability to ascertain the truth [and] necessarily strikes at the very foundations of the adversary system and the

judicial process'") (quoting *In re Sealed Case*, 754 F.2d 395, 401 (D.C. Cir. 1985));
*Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 2016
WL 128561, at *13 (M.D. Fla. Jan. 12, 2016) (noting that "the imposition of the
attorney's fees and costs incurred" as a result of filing "demonstrably false"
affidavit "would be a[n] . . . appropriate sanction").

### B.      Sanctions Are Also Warranted for Spoliation of Evidence.

Mr. Buechler's sworn testimony also detailed spoliation of evidence in a
blatant violation of the parties' filed stipulation.  In the ESI Stipulation, Mr.
Buechler and his counsel agreed that "any device that Plaintiffs used to access
Rumble or Facebook will be preserved."  ESI Stip. ¶ 5(f).

This is no foot fault.  In fact, information from Mr. Buechler's electronic
devices is obviously relevant:  The Complaint pled that he "used a . . . smart
phone to access streaming video content" on rumble.com—but Mr. Buechler's
Rumble mobile application no longer exists to confirm that he ever viewed a
video on Rumble before filing his Complaint.  Compl. ¶ 12.[4]  At his deposition,
Mr. Buechler testified that he had used the Rumble application on his phone.  Yet
he also stated, under oath, that the Rumble mobile application *is not on that
phone* and that he would have deleted the mobile application if he wanted to.  Ex.
3 at 55:3–6, 55:13–22 ("It is not on my phone."); *id.* at 59:19–25 ("If I wanted to
get rid of it, I would have deleted it because I don't think that would be a

---

[4] Viewing a video is a prerequisite to bringing a VPAA claim; "the VPPA requires identifying the
viewers and their video choices."  *Perry v. Cable News Network, Inc.*, 2016 WL 4373708, at *4
(N.D. Ga. Apr. 20, 2016) (quotation marks omitted).

document or anything like that . . . .").  This apparent deletion of electronic data plainly violates the ESI Stipulation.

Rule 37(e) provides for sanctions in the event of spoliation such as this. *Scrap King LLC v. Stericycle, Inc.*, 2022 WL 18495259, at *6 (M.D. Fla. Dec. 20, 2022).  Under Rule 37(e), the Court may impose sanctions if it finds a party acted with the "intent to deprive" the opposing party of the ESI.  Such "intent to deprive" is shown here by Mr. Buechler's refusal to comply with the parties' ESI stipulation regarding preservation of documents.  *See* Fed. R. Civ. P. 37, committee note to 2006 amendment ("Among the factors that bear on a party's good faith . . . are the steps the party took to comply with a . . . party agreement requiring preservation of specific electronically stored information[.]").

The other Rule 37(e) factors are also met.  ***First***, Rule 37(e) requires that there was a duty to preserve ESI at the time it was spoliated.  That is easily satisfied.  Mr. Buechler made a rumble.com account six days before he filed this very litigation and a mere three days (at most) before he contacted his current attorneys of record,[5] so any mobile application that he downloaded was well within the period of pending or foreseeable litigation.  *See, e.g.*, *Doe v. Willis*, 2023 WL 2918507, at *7 (M.D. Fla. Apr. 12, 2023) (finding plaintiff was obligated to preserve iPhone "and the ESI it contained" at least one month before

---

[5] Mr. Buechler further testified that he emailed with his attorneys in "June, July, or August" of 2022.  Dubinsky Decl., Ex. 3 at 207:2-19.  However, the privilege log Plaintiffs provided lists no such emails.  Dubinsky Decl., Ex. 8 at 4.  Defendant asked counsel for Plaintiffs to explain this discrepancy and address other concerns; Plaintiffs' sole response was that they were under "no obligation to respond" and refused to explain.  Dubinsky Decl., Ex. 9.

commencing litigation, when she hired her attorney). ***Second***, the ESI at issue here was lost or destroyed. This element is readily met by Mr. Buechler's own sworn statements that he did, at one time, have the rumble.com mobile application on his phone and that it is no longer there. Dubinsky Decl., Ex. 3 at 55:3–6, 55:13–22; *see Doe*, 2023 WL 2918507, at *7 (finding element met where "uncontested" that plaintiff discarded phone). ***Third***, Mr. Buechler failed to take reasonable steps to preserve the ESI. Deleting documents constitutes a failure to take reasonable steps, particularly when a party—like Mr. Buechler—has "considerable experience in litigation" and should be familiar with document preservation obligations given his participation in more than 40 cases. *Id.* at *7. ***Finally***, the ESI in its entirety cannot be retrieved from a different source.

Accordingly, Mr. Buechler's failure to abide by the parties' ESI stipulation and the resulting spoliation of evidence warrant sanctions pursuant to Rule 37. Alternatively, it would be appropriate for the Court to impose sanctions for this discovery misconduct under the Court's inherent powers. *See, e.g.*, *People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, 2020 WL 897988, at *2, *4, *13 (M.D. Fla. Feb. 25, 2020) (upholding R&R imposing sanctions under both Rule 37(b) and inherent powers, including costs, for modifying site in violation of court-ordered site inspection).

### C. Requiring Mr. Buechler To Pay Half of Rumble's Attorney Fees and Costs to Date Is The Appropriate Remedy.

Mr. Buechler has moved to dismiss his claims in this case, but only after being caught altering evidence and falsely testifying about it. This has come after

nearly a year of Mr. Buechler aggressively pursuing his claims in this Court instead of in the agreed-upon forum in Canada.  However, the misconduct described above suggests that Mr. Buechler's claims are and have always been a sham—since he signed up for rumble.com six days before the suit was commenced and failed to preserve evidence from his phone, it is not clear that Mr. Buechler even viewed any videos on rumble.com before filing this VPPA case. It is simply a lawsuit for lawsuit's sake.

Thus, the appropriate amount in sanctions to levy here must account for both the costs inflicted upon Rumble and the amount needed to deter this type of misconduct by a serial class-action plaintiff.  "Those who lie, evade and fail to tell the whole truth obviously enjoy an advantage over honest litigants.  The victimized opponent winds up, as in this case, consuming substantial resources to respond to and 'undo' the victimizer's lies and distortions." *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1409–10 (S.D. Ga. 1998) (emphasis omitted).  Mr. Buechler chose to sue Rumble.  He chose to manipulate a document.  He then chose to apparently lie about such manipulation under oath.  And he chose to delete the Rumble app from his mobile phone.  "[A] lesser sanction" than half of all of Rumble's attorneys' fees and costs to date "would not sufficiently punish and deter the abusive conduct." *Qantum Commc'ns.*, 473 F. Supp. 2d at 1269.

Indeed, Mr. Buechler's participation in this lawsuit has inflicted meaningful costs on Rumble.  Rumble's decisions to date with respect to motion practice, pleadings, and discovery have necessarily entailed a consideration of

Mr. Buechler.  In order to file an adequate Answer, Rumble had to specifically address Mr. Buechler's contentions, which required internal investigations. Rumble assessed what discovery requests as to Mr. Buechler it needed to propound.  It responded to discovery requests mindful of Mr. Buechler's suit.  It reviewed documents for relevance to Mr. Buechler's claims.  It prepared for depositions to both test and defend against (in the case of Rumble's 30(b)(6) deponent) those same claims.  And in assessing the misconduct at issue, corresponding with opposing counsel, and in filing relevant papers, Rumble has expended costs well above and beyond what it would have incurred had Mr. Buechler complied with his obligations.  Other cases with similar conduct have resulted in analogous monetary sanctions.  *See, e.g.*, *Snider-Hancox*, 2018 WL 6448765, at *10 (S.D. Fla. Dec. 3, 2018), *order clarified*, 2018 WL 11349996 (S.D. Fla. Dec. 11, 2018) (awarding fees and costs incurred in motions to compel for continuance, for reconsideration, for trial preparation work, and for engagement of forensic expert); *U.S. ex rel. Bibby v. Wells Fargo Home Mortg. Inc.*, 76 F. Supp. 3d 1399, 1414 (N.D. Ga. 2015) (imposing monetary sanction for bad faith conduct of violating court order); *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 700 (N.D. Ga. 2009) (same, for e-discovery misconduct and misrepresentations to counsel and the court).  In the alternative, at a bare minimum, Mr. Buechler should have to reimburse Rumble for half of its discovery-related costs and attorneys' fees to date.

In fashioning the appropriate remedy, the Court should also consider the critical implications of Mr. Buechler's apparent alteration of evidence and perjury. The doctored email was not inconsequential—the date that Mr. Buechler signed up for and watched videos on rumble.com are the core of his claim that Rumble violated his rights under the VPPA. "[S]everal federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or linchpin issue in the case." *People For The Ethical Treatment of Animals*, 2020 WL 897988, at *5 (M.D. Fla. Feb. 25, 2020) (citing *Qantum Commc'ns.*, 473 F. Supp. 2d at 1269).

The Court should also consider Mr. Buechler's history as a serial litigant and prior accusations of fraud raised against him in prior federal court cases. *See O'Neal v. Allstate Indem. Ins. Co. Inc.*, 2021 WL 4852222, at *5 (11th Cir. Oct. 19, 2021) (rejecting a plaintiff's sanctions appeal, in part, because "the district court . . . conducted a comprehensive examination of Plaintiff's litigation history, cited dozens of Plaintiff's past cases, concluded that only two had merit, and provided examples of past cases where Plaintiff followed an abusive strategy"); *see also Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1313-14 (11th Cir. 2021) (finding district court had "inherent power to investigate the scope and extent" of litigant's misconduct that "threaten[ed] the integrity of the court"). Mr. Buechler has been a plaintiff in over 40 other cases. He has even been accused of fraud before in federal court. *Supra* at 5, 8. And his streak of litigation still continues; two days after his deposition at which he seemingly perjured himself, Mr.

Buechler brought yet another putative class action in federal court.  *See Buechler v. Adv. Med. Mgmt., LLC*, No. 23-cv-1891 (D. Md. July 13, 2023).  That followed yet another class-action suit, filed in the Southern District of Florida in late June 2023.  *See Buechler v. Managed Care of North America*, No. 23-cv-61182 (S.D. Fla. June 22, 2023).

*     *     *

Rumble does not file this motion, or seek these remedies, lightly.  But the judicial process cannot be so lightly disregarded, or shown such little respect, as Mr. Buechler has displayed here.  Rumble expended great time and costs in defending what it assumed to be Mr. Buechler's good-faith claim for a violation of the VPPA.  Allowing Mr. Buechler to walk away scot-free would be a disservice to the federal judicial system.

## II.   Alternatively, Should the Court Have Any Doubts About Whether Sanctions Are Warranted, Mr. Buechler Should Be Compelled To Produce the Native Version of the Email In Question.

Under Federal Rule of Civil Procedure 37, a "court may compel a party to . . . produce documents" on a motion to compel discovery.  *Hicks v. Deepwater Glob. Distrib., Inc.*, 2018 WL 3427876, at *2 (M.D. Fla. July 16, 2018).  The party resisting discovery "bears the burden of establishing lack of relevancy or undue burden in supplying the requested information. . . . [that party] must specifically demonstrate how the request is unreasonable or unduly burdensome." *Christie v. Scott*, 2011 WL 13294586, at *3 (M.D. Fla. Aug. 18, 2011) (internal quotations

and citations omitted).  To the extent this Court has any doubt as to whether sanctions are warranted or whether Mr. Buechler doctored the Altered Email— and Rumble believes there can be no doubt on this point, in light of his refusal to turn the native file over, and his sudden desire to drop from the case and move onto other lawsuits—the Court should compel Mr. Buechler to produce (through his counsel) the native file.

## <u>CONCLUSION</u>

"[T]his wolf comes as a wolf."  *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).  The Court should sanction Mr. Buechler and order him to pay Rumble for half of its litigation costs and attorneys' fees to date. Alternatively, or in addition, the Court should compel Mr. Buechler to produce a native copy of the Altered Email.  The Court should also retain jurisdiction over Mr. Buechler, and that of his current counsel-of-record, to enforce any such further orders in respect of sanctions.

Dated:  August 7, 2023
          New York, New York

Respectfully submitted,

SHUMAKER, LOOP &                    */s/ Gregory J. Dubinsky*
KENDRICK, LLP                       Gregory J. Dubinsky (*pro hac vice*)
Jennifer B. Compton                 Jayme Jonat (*pro hac vice*)
240 S. Pineapple Avenue             HOLWELL SHUSTER & GOLDBERG LLP
P.O. Box 49948                      425 Lexington Avenue
Sarasota, Florida 34230-6948        New York, NY 10017
(941) 366-6660                      (646) 837-5151
jcompton@shumaker.com               gdubinsky@hsgllp.com

                                    *Attorneys for Defendant Rumble Inc.*

## <u>RULE 3.01(g) CERTIFICATION</u>

Pursuant to Middle District of Florida Local Rule 3.01(g), the undersigned certifies that Defendant's counsel has conferred with Plaintiffs' counsel regarding the relief sought herein via email on August 3, 2023 and August 4, 2023. Plaintiffs' counsel advised on August 4, 2023 that Plaintiff Martinez takes no position on this motion.  As to Plaintiff Buechler, his counsel informed Defendant that "we are not in a position to provide a response regarding your referenced motion."

Dated: August 7, 2023

*/s/ Gregory J. Dubinsky*
Gregory J. Dubinsky
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
gdubinsky@hsgllp.com