# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JESSE MARTINEZ, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>RUMBLE INC.,<br><br>    Defendant. | Case No. 8:22-cv-02237-SDM-AAS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW** |

## INTRODUCTION

While Defendant tries mightily to avoid litigating the merits of Plaintiff's claims in this Court, the facts of this case do not permit it. Defendant's summary judgment motion devotes noticeably little space to addressing the facts that answer the dispositive question of whether the Ontario Superior Court ("OSC") is an adequate forum for Plaintiff's claims. The reason is simple. As much as Defendant ignores or mischaracterizes the evidence, relies on the unhelpful (and contradictory) opinions of its proffered expert, and attempts to force a result prohibited by the very contract it seeks to enforce, the facts confirm that Plaintiff has no satisfactory remedy in the OSC under Ontario law. Accordingly, Defendant's motion should be denied.

## BACKGROUND

The Court is familiar with this case's history, and Plaintiff has recited the material undisputed facts supporting his summary judgment motion. (*See* ECF

1

No. 110). But given Defendant's misguided criticisms of Plaintiff and forum discovery, Def.'s Mot. Summ. J. ("Mot.") at 6, a brief detour is needed to correct certain mischaracterizations before returning to the merits.[1]

Defendant criticizes Plaintiff for amending and supplementing responses to certain contention interrogatories and related requests for admission at the conclusion of forum discovery, Mot. at 6-7, but this is exactly what the Federal Rules of Civil Procedure contemplate. Indeed, Defendant amended various discovery responses of its own, including ones to which accurate and complete answers should have been provided initially, on the same timeframe.[2]

Defendant's criticism of Plaintiff for suspending his deposition due to health issues—particularly when he was admitted to a Tampa hospital and kept there overnight—is also misplaced. Counsel witnessed the effects of Plaintiff's health issues firsthand and well knows that suspension was imperative. Plaintiff's counsel offered various options to provide Defendant any additional information required from Plaintiff in discovery, while accommodating Plaintiff's serious health issues. Although Defendant initially claimed it was prejudiced by the deposition's suspension, Defendant ultimately declined to respond to any of Plaintiff's offers to address its concerns, including concluding the deposition when

---

[1] Plaintiff does not believe it would be productive or worthwhile to correct Defendant's misstatements of various other immaterial background facts. See Mot. at 4-8.

[2] *See, e.g.*, P-Ex. 10 at 5 (On June 21, 2023, Rumble amended its responses to Plaintiff's First Set of Forum-Related Requests for Admission to finally "admit" that Rumble is incorporated in Longboat Key, Florida.); P-Ex. 9 at 7–9 (On August 4, 2023, Rumble amended its responses to Plaintiff's Second Set of Forum-Related Interrogatories to provide a breakdown between its monthly active users (MAUs) in the U.S. and Canada.). Exhibits for Defendant's Motion are "D-Ex."; those for Plaintiff's Motion are "P-Ex."

2

medically authorized. Notably, Defendant did not identify any additional topics directly relevant to forum it had not already covered that it still needed to pursue. Indeed, when questioning Plaintiff, Defendant chose to spend much of the time asking a variety of questions on plainly irrelevant topics;[3] the takeaway from this is that Defendant had nothing relevant left to ask. (*See* Counsel's Email Correspondence (Ex. 1)).

Nonetheless, the parties concluded forum discovery, which included serving and responding to numerous discovery requests and deposing multiple fact and expert witnesses in this District and abroad, in a short timeframe without seeking an extension. The resulting evidentiary record demonstrates that this case must proceed before this Court and that Defendant's motion should be denied.

## ARGUMENT

### I. The OSC is an inadequate forum for Plaintiff to litigate his claim.

#### A. Defendant has the burden of proving the OSC is adequate because its forum selection clause is ambiguous and permissive.

As an initial matter, Defendant attempts to shift the burden on Plaintiff to prove that the OSC is inadequate by arguing that the forum selection clause is mandatory and because it uses the words "exclusive" and "shall." Mot. at 10. Application of Eleventh Circuit law to the language of this clause, however, yields the opposite conclusion.

---

[3] *See, e.g.*, D-Ex. 4 at 75:12-76:25 (questioning Mr. Martinez about incident report in criminal case); 90:17-92:4 (questioning Mr. Martinez about Mr. Buechler's testimony under oath).

3

In the Eleventh Circuit, "the language of the clause" must be "clear" and "unequivocal" in "dictat[ing] an *exclusive forum* for litigation" to be mandatory. *Slater v. Energy Servs. Group Intern., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (emphasis added); *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1268 (M.D. Fla. 2007).[4] Courts thus "enforce only those clauses that unambiguously designate *the forum* in which the *parties must* enforce *their rights* under the contract." *Fla. Polk Cnty. v. Prison Health Servs.*, 170 F.3d 1081, 1084 n.8 (11th Cir. 1999) (emphasis added). Consequently, clauses permitting a party to elect where among multiple courts litigation will proceed are permissive. *See PNC Bank, Nat. Ass'n v. GVTG, LLC*, 592 Fed. App'x 775, 778-79 (11th Cir. 2014) (ruling clause that "Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of" specified state and county permissive "because the terms of the agreement allow the Lender to make an election" and "requires that the defendants submit to suit there").[5]

Here, the forum selection clause is permissive because it gives Defendant's Canadian subsidiary the "discretion" to choose where among multiple "courts"

---

[4] *See Stateline Power Corp. v. Kremer*, 148 F. App'x 770, 771 (11th Cir. 2005) (vacating remand order where clause lacked "mandatory language to indicate that the parties meant to foreclose litigation anywhere else"); *Caribbean Gardens Condo. Ass'n, Inc. v. Markel Ins. Co.*, 2016 WL 11201233, **2-3 (S.D. Fla. May 12, 2016) (clause deemed permissive when language does not indicate "the parties agreed to <u>exclusively</u> litigate in the chosen jurisdiction") (emphasis in original); *Sybac Solar AG v. Sybac Solar, LLC*, 2012 Wl 6814193, *4 (M.D. Fla. Oct. 12, 2012) (noting key issue whether language "indicates the parties meant to foreclose litigation anywhere else"), *report and recommendation adopted*, 2013 WL 104912 (M.D. Fla. Jan. 9, 2013).

[5] *See also Caribbean Gardens*, 2016 WL 11201233, at *3 (holding clause permissive that "on its face" "allows Plaintiff to select 'any court of competent jurisdiction within the United States' and requires that Defendant consent to the jurisdiction of such court" where "there is nothing in the clause to indicate" that "Plaintiff's forum of choice is the <u>exclusive</u> forum to litigate disputes arising from the contract") (emphasis in original).

4

the parties may litigate related claims. (*See* D-Ex. 7 at 26). The clause is not mandatory because it does not "clear[ly]" and "unequivocal[ly]" "dictate an exclusive forum for litigation" where "the parties must enforce their rights." *Slater*, 634 F.3d at 1330; *Prison Health*, 170 F.3d at 1084 n.8. Indeed, Defendant's own conduct confirms that it shares this conclusion, as it has (impermissibly) offered to violate the terms of this very clause (which it argues is binding) in stating it would accept service of process in Canada's Federal Court. Mot. at 22 (citing Ellis Decl.).

*Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284 (11th Cir. 2021), upon which Defendant relies, Mot. at 8, does not change this. There, the forum selection clause provided that the plaintiff was required to sue in England, while the defendant could sue in a non-English forum. *Id.* at 1297-98. Unlike in *Don't Look*, the clause here does not dictate one exclusive forum for Plaintiff; rather, the clause provides that Plaintiff may proceed in one of several courts at Defendant's discretion. By its plain language, therefore, the clause is permissive. *Accord Caribbean Gardens*, 2016 WL 11201233, at *1 ("[If a clause is ambiguous, such that a court cannot determine whether a clause is permissive or mandatory, the clause should be construed against the drafter.") (citing *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004)).

In permissive clauses like this one, the "party moving to dismiss on the basis of *forum non conveniens*"—Defendant—"must demonstrate … that an adequate alternative forum is available." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997); *see GDG Acquisitions, LLC v. Gov't of Belize*,

5

749 F.3d 1024, 1028 (11th Cir. 2014) (same). This is much too high a bar for Defendant to meet.

### B. Proceeding in the OSC under Ontario law would deprive Plaintiff of a satisfactory remedy for Defendant's privacy violations.

Even if the forum selection clause is deemed mandatory and the burden of proof rests with Plaintiff, the result would not change. No remedy, let alone "multiple potential" ones, Mot. at 16-21, is available to Plaintiff.

Importantly, Defendant agrees that an adequate forum must "provide[] for ***litigation*** of the ***subject matter of the dispute*** and potentially offer[] ***redress*** for ***plaintiff's*** injuries." Mot. at 16 (quoting *King*) (emphasis added); *see* Pl.'s Mot. Summ. J. ("Pl.'s Mot.") at 16-17 (same). Thus, whether "Canada" has been held to be adequate in unrelated and distinguishable disputes, Mot. at 15, has no bearing on whether the OSC is an adequate forum for Plaintiff to litigate his Video Privacy Protection Act ("VPPA") claim. And, in contrast to the *National Hockey League Players Association* case holding that Canada was an inadequate forum to litigate the plaintiffs' federal antitrust claims, *see* Pl.'s Mot. at 17, Defendant does not cite any case holding the OSC to be an adequate forum under remotely similar circumstances. This is because the facts show that Plaintiff cannot plead or litigate any cause of action in the OSC under either the Personal Information Protection and Electronic Documents Act ("PIPEDA") or Ontario common law.

    1. <u>Plaintiff has no available remedy based on PIPEDA</u>.

Defendant's arguments for why PIPEDA "potentially" could provide "redress" to Plaintiff, Mot. at 18, are meritless. *First*, there is no private right of

6

action under PIPEDA, as the Canadian courts and the OPC agree. *See* Pl.'s Mot. at 4–5; 16–19. Because the undisputed facts prove that an individual who suffers a PIPEDA violation may never be able to bring a cause of action to remedy that harm, no private right of action exists under the statute, and the OSC (or any other court) does not "provide[] for litigation of the subject matter of the dispute and potentially offer[] redress for plaintiff's injuries." Mot. at 18.

Defendant's assertion that Plaintiff's expert concedes that PIPEDA grants a private right of action, Mot. at 18-19, is false. The document Defendant cites—a policy proposal that Dr. Cofone drafted and the OPC published—shows precisely the opposite. In that piece, he discussed "the need for incorporating private rights of action," while adding that "[p]rivate rights of action were supported in the 2016-2017 OPC report to Parliament … as a reasonable evolution of Canadian private-sector privacy protection" "and in the 2018-2019 report to Parliament as a way of ensuring that individuals are not left without a remedy." (D-Ex. 21 at 3.) Defendant's out-of-context snippet from Dr. Cofone's report is similarly unsupportive. In reality, Dr. Cofone opined that "[e]ven if Plaintiff[] attempted to pursue such a remedy in court" under PIPEDA, he "would have no right to do so given the mandatory initial OPC process that complainants must follow and the investigatory discretion the OPC possesses." (D-Ex. 20 ¶30.)

*Second*, Plaintiff does not argue that he must "obtain" a remedy under PIPEDA in court for the remedy to be available. Mot. at 21 (mischaracterizing Plaintiff's expert's statements). In fact, Dr. Cofone plainly opined that it is at best unknown whether Plaintiff even could *pursue* a remedy for a PIPEDA violation in

7

court (even assuming he could surpass other hurdles). For example, as Dr. Cofone wrote in his report:

- Claims filed under PIPEDA must first be filed with and considered by the ... [OPC] before a plaintiff possibly may file an action in court. As the OPC itself explains … obtaining a remedy in court for a PIPEDA violation is not guaranteed.

- The OPC has discretion in deciding whether and how to act in response to a complaint of a privacy violation…. [T]he office has no obligation to investigate until reaching a positive finding.

- Importantly, individuals cannot sue under PIPEDA in court, and thus have no remedy available through the courts, if the [OPC] commissioner declines to investigate.

(D-Ex. 20 ¶¶ 22-30.)

*Third*, Defendant wrongly asserts that the forum selection clause "does not curtail Plaintiff's ability to 'seek remedies for violations of PIPEDA'" in the OSC by filing a breach of contract action. Mot. at 19 (quoting Loukidelis report). Loukidelis concedes, however, that: (1) the cases he cited, *Haikola* and *Speevak*, had contracts with "standard form privacy language" that gave rise to the implied breach of contract claim; (2) Defendant's Terms & Conditions ("T&C"), the only document on which he relied in forming his opinion on this claim, contains no such language; and (3) such a cause of action premised on the T&C could not be pleaded under Ontario law. *See* Pl.'s Mot. at 7, 20. These facts prove that a breach of contract action based on PIPEDA is unavailable to Plaintiff.

Defendant's attempt to shift focus away from these admissions to Dr. Cofone's discussion of *Haikola* and *Speevak*, Mot. at 20, does not work. Dr. Cofone correctly did not dispute that the plaintiffs in those cases could plead a breach of

8

contract cause of action because they were based on essential facts—namely, "standard form privacy language" in the contracts obligating the defendants to comply with PIPEDA—that is nowhere to be found here. He also did not opine that the T&C contained the requisite "standard form privacy language" that could allow Plaintiff to plead such a cause of action here.[6]

      2. <u>Plaintiff has no available remedy under Ontario common law</u>.

Defendant's argument that "potential" tort claims[7] may offer Plaintiff redress in the" OSC, Mot. at 17, also fails. Fatally, Loukidelis does not opine that Plaintiff could plead the elements for any such cause of action under Ontario common law based on the Complaint's well-pled allegations or any other record evidence. Nor could he: "it was not the mandate [he] was given." Not surprisingly, he also cannot point to any remotely analogous precedent suggesting otherwise. *See* Pl.'s Mot. at 19-21.

In addition, the assertion that Dr. Cofone "completely ignored" or only briefly discussed most of these causes of action, Mot. at 17, only proves Plaintiff's point. Since these causes of action are unavailable to Plaintiff—as Loukidelis implicitly conceded the first time he submitted a sworn opinion on the subject—there was no reason for Dr. Cofone to state the obvious.

---

[6] Those plaintiffs also successfully complained to the OPC about the underlying PIPEDA violations and thus could litigate the related contract claims, *see* Pl.'s Mot. at 8 (citing P-Ex. 2 at 150:3-11)—yet another problematic fact Defendant ignores.

[7] "[B]reach of contract," Mot. at 17, is not a tort. At any rate, Plaintiff discusses this claim above because it is premised on an underlying violation of PIPEDA and Loukidelis grouped this claim with his PIPEDA discussion in his report.

Finally, intrusion upon seclusion is no more available to Plaintiff than the other torts. Plaintiff does not dispute that this tort, based on important dignitary concepts, can constitute a valid privacy claim under the right set of particularly egregious circumstances. But this case is not one of them under Ontario law.[8]

This is because Plaintiff does not and cannot allege any material fact supporting the tort's "highly offensive" element. Again, Loukidelis does not opine that Plaintiff can do so for this or any other common law cause of action under Ontario law based on any reliance material. *See* Pl.'s Mot. at 20. Moreover, Plaintiff does not allege any material fact that reasonably could support pleading Defendant's conduct as "highly offensive to a reasonable person." Nor does he consider Defendant's conduct as such; indeed, his testimony proves otherwise. *See* Pl.s' Mot. at 20; D-Ex. 3 at 9 (testifying that he "did not" feel "humiliated" and only "somewhat" "anguished"). The fact that he did not plead the domestic version of the tort here further confirms that he cannot (and would not) plead this cause of action in the OSC under Ontario law. *See* Pl.'s Mot. at 20; Cofone Dep. Tr. (attached as Ex. 2) at 374:14-378:4.

### C. Canadian courts do not have jurisdiction over this dispute.

The Court should reject Defendant's request that the Court punt on deciding whether a Canadian court has jurisdiction over this dispute and instead use "the typical conditional dismissal device." Mot. at 21. For one, the case on which

---

[8] "The case establishing this cause of action in Ontario 'ma[d]e it clear that recognizing this cause of action will not open the floodgates' and that '[c]laims will only arise for deliberate and significant invasion of personal privacy.'" Pl.'s Mot. at 7. And "the cases on which Loukidelis relies to opine that Plaintiff could pursue this remedy concerned the unauthorized 'sharing' of plaintiffs' personal information to other 'individuals.'" *Id.*

10

Defendant relies, *Ford v. Brown*, 319 F.3d 1302 (11th Cir. 2003), is distinguishable. There, the defendant's jurisdictional defense waiver, unlike the one Defendant pushes, was neither illusory nor contradicted the term of any forum selection clause it sought to enforce; indeed, no clause applied at all.[9] Additionally, courts often apply foreign law to relevant facts to reach reasoned rulings, just like the Court will do on the related issue of whether a remedy is available to Plaintiff in the OSC under Ontario law. The Court should do the same for jurisdiction.

Defendant's arguments on the merits, *see* Mot. at 22, fare no better because the record confirms the absence of a "real and substantial connection" between this dispute and Canada. *See* Pl.'s Mot. at 21-25. In cases where a defendant's business is internet-based, like this one, the location of its website's operator is not nearly as important a factor as Defendant insinuates. *Id.* at 23 n.14. This is particularly true in internet privacy cases like this one where all other factors do not establish the necessary connection with Canada. *Id.* at 22-23. Indeed, Defendant's target audience is based in the U.S.; the domestic location of Defendant, a substantial majority of its employees and capital assets, and an overwhelming share of its subscribers prove this. *Id.* at 22.[10] In addition, Defendant's servers are located exclusively in the U.S., as its corporate

---

[9] The same goes for other Eleventh Circuit orders conditionally dismissing cases pursuant to jurisdictional defense waivers. *See, e.g., Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331 (11th Cir. 2020); *Aviation One of Fla., Inc v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870 (11th Cir. 2018); *Saltz v. McDonnell Douglas Corp.*, 244 F.3d 1279 (11th Cir. 2001); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996).

[10] Where Defendant's senior executives are based, Mot. at 22, is not a recognized factor. *See id*. Nevertheless, some of them, like its General Counsel and Corporate Secretary—and Rule 30(b)(6) corporate representative here—are based in the U.S. (*See* Ellis Decl.)

11

representative admitted under oath.[11] Thus, the relevant factors show that no "real and substantial connection" exists between this dispute and Canada.

Not surprisingly, Defendant's expert can identify no authority applying jurisdiction under sufficiently similar facts. *Id.* Defendant's cited cases, Mot. at 22 n.14, do not suggest otherwise. Indeed, each case involved an American plaintiff or class member or the flow of relevant personal information exclusively within American borders. Furthermore:

- *Lawson v. Accusearch Inc.* expressly stated that jurisdiction would not exist if the plaintiff were American. Pl.'s Mot. at 23.

- *A.T. v. Globe24h.com* held that when a defendant's "activities take place exclusively through a website, the physical location of the website operator … is not determinative because telecommunications occur both here and there," while emphasizing the following connections that do not exist here: "the content that is at issue is Canadian court and tribunal decisions containing personal information;" "the website directly targets Canadians" and "the majority of visitors to [defendant's site] are from Canada;" and "the impact of the website is felt by members of the Canadian public," as "evidenced by the complaints received by both the OPCC and media reports of individuals" experiencing harm due to defendant's "republishing their personal information." (D-Ex. 29 ¶54; P-Ex. 2 at 253:7-18, 254:15-256:2.)

- *Society of Composers v. Canadian Assn. of Internet Providers* concerned Canadian plaintiffs who claimed illegal downloading of their Canadian copyrights harmed them in Canada. (D-Ex. 31; P-Ex. 2 at 249:19-252:253:1.)

- *Chevron Corp. v. Yaiguaje* applied a very different standard in the context of a foreign judgment enforcement: "Canadian courts have adopted a generous and liberal approach to the recognition and enforcement of foreign judgments" where "there is no need to demonstrate a real and substantial

---

[11] Defendant's prior sworn interrogatory response on the topic and its representation that its "data was stored on servers in Canada" "[a]t all relevant times," Mot. at 22, are false. Defendant does not dispute that the class period is September 29, 2020, through *the present*, that it processed and stored the personal information of Plaintiff (and all other class members) *only* in the U.S. during this period, and that its only servers have been located exclusively in the U.S. since first quarter 2023. Pl.'s Mot. at 13, 23.

12

- connection between the dispute and" Canada. (D-Ex. 32; P-Ex. 2 at 225:11-226:18.)
- *Equustek Solutions Inc. v. Google Inc.* concerned the defendant's improper collection of British Columbians' personal information through conduct occurring in British Columbia. (D-Ex. 33, D-Ex. 34; P-Ex. 2 at 227:7-228:25.)

Loukidelis' resulting opinion that "an Ontario court would assume jurisdiction" is unmoored from the facts and thus unhelpful.

### D. Defendant's conditional "agreement" to submit to the jurisdiction of "Canadian Courts" is illusory and unenforceable.

Nonetheless, Defendant asserts that the Court should dismiss the case because it will conditionally agree to "submit to the jurisdiction of the Canadian Courts." Mot. at 22 (citing Ellis Decl. ¶3). Defendant's commitment is woefully inadequate under Eleventh Circuit law, and the Court should not condone it.

Defendant's commitment is expressly "subject to Plaintiff's compliance with any required administrative steps in the Canadian forum." (Ellis Decl. ¶3.) In other words, Plaintiff must get past the OPC and be able to file a PIPEDA-related cause of action in a "Canadian Court" for Defendant's promises to attach.[12] But Defendant has not agreed to do anything to help Plaintiff get there (which would not occur per the various reasons discussed in Plaintiff's motion). If anything, Defendant signals it will do the opposite. For instance, Defendant has *not* committed to submit to the OPC's jurisdiction, such as by conceding a "real and substantial connection with Canada" exists, or to cooperate with its investigation,

---

[12] For Plaintiff to even theoretically be able to file a cause of action under PIPEDA in Federal Court—which he has no right to do and which the forum selection clause prohibits—the OPC would first need to determine it has jurisdiction under the "real and substantial connection" test and issue a report or a discontinuation notice which Loukidelis concedes does not happen "from time to time." Pl.'s Mot. at 18-19.

13

including by making available its "witnesses or documents." (Ellis Decl. ¶3(a)-(e) (commitments apply only to "Canadian Courts")).

Additionally, Defendant all but guarantees that it *will* move to dismiss any complaint filed in court on limitations grounds. Defendant's promise to not do so "as long as Plaintiff files an action in the appropriate Canadian court within six months from the date the Court enters judgment in this action," (*id.* ¶3(b)), is an empty one. That is because this six-month timeline is unrealistic and likely unachievable given the OPC has "a year" to "conclude its investigation," it "sometimes encounters delays in issuing reports for complaints it decides to investigate," and it "took nearly three years to issue its report" in one of Loukidelis' cited cases. (D-Ex. 20 ¶27.)[13]

This hollow "agreement" stands in stark contrast to those that the Eleventh Circuit has accepted in conditionally dismissing cases. *See Magnin*, 91 F.3d at 1430-31 (agreement to "waive any statute of limitations or jurisdictional defenses" without caveat); *Aviation One*, 722 Fed. App'x at 885-86 (defendant "stipulates that it will consent to service of process" and "toll any applicable statute of limitation in England" without qualification). Indeed, Defendant's own case, *A/S Dan-Bunkering Ltd. v. M/V Centrans Demeter*, 633 F. App'x 755 (11th Cir. 2015), recognizes this. *See id.* at 758 ("agreement to waive any statute of limitations or jurisdictional defenses").[14] The Court should not endorse it.

---

[13] That Defendant knows this yet sees no problem with adding this limiting language as proof of its bona fides is a concerning preview of further things to come in Canada if Defendant gets its way.

[14] Defendant's omission of "any" from the quote, Mot. at 22, materially changes its meaning.

14

### E.  Dr. Cofone is the only expert whose opinions should be credited.

Defendant finally tells the Court to "assign no weight" to the opinions of Plaintiff's expert, Dr. Cofone, while uncritically crediting its own expert's opinions. Mot. at 22-23. This position is meritless.

Critically, Defendant does not contest the methodology that Dr. Cofone used or the materials on which he relied in forming his opinions, thus conceding the reliability and fitness of his opinions. Unlike his counterpart, Dr. Cofone applied the relevant authority to the relevant facts without guardrails from counsel in forming his opinions. *See* Pl.'s Mot. at 7; 23. Dr. Cofone, moreover, is plainly qualified to do so. He is recognized as an expert in Canadian privacy law by the Canadian agency that enforces PIPEDA, by Canada's preeminent university where he is a tenured professor teaching privacy law, and by other respected institutions and publishers worldwide. (D-Ex. 21 at 1; Ex. 2 at 364:17-366:12; D-Ex. 20 ¶¶1-3.)

Despite this, Defendant maintains that Dr. Cofone's opinions deserve no weight because he is a law professor who is not an expert on subjects besides Canadian privacy law. For good reason, courts often credit expert opinion testimony from law professors in their areas of specialty—particularly in disputes regarding a foreign forum's adequacy. *See In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1181-84 (C.D. Cal. 2004) (relying on expert

15

opinions of foreign law professors in deciding whether foreign court had jurisdiction and provided adequate remedy).[15] This Court should do the same.

Defendant's cases, *see* Mot. at 23-24, do not suggest otherwise. In *Bigio v. Coca-Cola Co.* 2010 WL 3377503 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675 F.3d 163 (2d Cir. 2012), the court recognized that "an expert need not be admitted to practice in the country whose law is at issue" before discrediting one expert's "conclusory, partisan statement that" one side acted illegally "despite the existence" of facts absolving it. *Id.* at *5. And nothing in *Dulles v. Katamoto,* 256 F.2d 545 (9th Cir. 1958), suggests that a foreign law professor's testimony may not serve as "proof of a foreign law." *Id.* at 547. If anything, its decision to credit the opinion of a foreign lawyer on his nation's law, particularly given the opponent's "failure to produce" any contrary evidence, *id.*, supports the proposition.

Furthermore, Dr. Cofone's stipulation that he is not an expert on subjects besides Canadian privacy law does not hinder his ability to opine on it; if anything, this candor supports his credibility. Notably, Defendant's expert also conceded that he was only "putting [him]self forward as an expert" in the "field of Canadian privacy law." (P-Ex. 2 at 46:4-16.)[16]

---

[15] *See also In re Duque*, 177 B.R. 397, 405 (Bankr. S.D. Fla. 1994) (crediting opinion of "qualified expert witness" law professor that "Trustee lacked access to any effective discovery mechanism in Colombia"); *accord Corwin v. Walt Disney Co.*, 2004 WL 25486639, *11 (M.D. Fla. Nov. 12, 2004) (law professor "clearly qualified" to render expert opinion on copyright infringement despite no experience in relevant industry).

[16] Unlike Dr. Cofone, Loukidelis claims elsewhere to have "expertise" in more than a dozen different fields, although he has never been qualified by a court as an expert in any one of them. P-Ex. 2 at 35:3-36:2; Loukidelis Dep. Tr., Ex. 4 (attached as Ex. 3) at 1, 4 ("Expertise in privacy law; freedom of information law; open government and open data; administrative law; local government law; lobbyists registration law; government ethics law; police discipline law; technology law; public policy and legislation; tribunal operations and administration; justice

While Dr. Cofone's opinions deserve significant weight, the same cannot be said of his counterpart. Although Loukidelis boasts "nearly 40 years of experience," Mot. at 23, the fact remains that he failed to employ a reliable methodology in forming his opinions and to tether his opinions to the facts of this case.[17] As a result, his opinions should be afforded little to no weight.

Loukidelis did not employ an appropriate methodology in forming his opinions. He admitted that while "[i]t is not the mandate [he] was given" to opine whether Plaintiff could viably plead the elements for any purportedly available cause of action under Ontario law, "consciously and diligently any counsel would want to satisfy themselves" on this before bringing such claims. Pl.'s Mot. at 7, 20. Because Loukidelis admits that he did not apply "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), his opinions are unreliable.

Nor do Loukidelis' opinions rest on a sufficient factual foundation. Indeed, while he testified that he relied on the Complaint's factual allegations in forming his opinions on available causes of action, he concedes that nothing in it, or anything else on which he relied, would permit Plaintiff to plead the elements for any cause of action under Ontario law. Because his opinions are not sufficiently "tied to the facts of [this] particular case," *Kumho Tire*, 526 U.S. at 150, they are unreliable for this additional reason.

---

system administration and reform; public administration.").

[17] *Accord Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1304-05 (11th Cir. 2014) (discussing expert testimony admissibility requirements under Federal Rule of Evidence 702).

17

## II. Defendant cannot meet its burden for dismissal under a traditional *forum non conveniens* analysis.

Finally, Defendant raises an argument that it never made in its motion to dismiss: even if the Court determines the forum selection clause is unenforceable, the Court "should still conditionally dismiss this action" in favor of "the courts in Ontario," including the Federal Court, "without relying on the forum selection clause" under a "traditional *forum non conveniens* analysis." Mot. at 24-25.

Such a dismissal presents an exceedingly high bar that Defendant fails to address, let alone clear. Absent a forum selection clause, Plaintiff's choice of forum "should rarely be disturbed," and Defendant "has the burden of persuasion as to all elements." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020). Defendant must prove: (1) an "adequate and available alternative forum" exists; (2) "the balance of the relative private and public interests must weigh in favor of dismissal;" and (3) "plaintiff[] must be able to reinstate [his] suit in the alternative forum without undue inconvenience or delay." *Id.*

As to private interests, "courts begin with the presumption that a domestic plaintiff has chosen a sufficiently convenient forum, and it is therefore incumbent upon the defendant to prove vexation and oppressiveness that are out of all proportion to the plaintiff's convenience." *Id.* at 1338-39. "The defendant must offer positive evidence of unusually extreme circumstances, and the district court must be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *Id.* (quotation omitted). Indeed, the presumption favoring a

18

plaintiff's chosen forum is "at its strongest" when he is a U.S. citizen. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, 382 F.3d 1097, 1101 (11th Cir. 2004).

The private interests favor Plaintiff. Plaintiff is a U.S. citizen suing in U.S. federal court. Defendant has failed to allege, much less prove, that it faces "vexation," "oppressiveness," "unusual or extreme circumstances," or "material injustice" that justifies disturbing Plaintiff's choice of forum. Nor could it—Plaintiff has sued Defendant in the *very district* it is based, and Defendant has filed suit, including an antitrust case pending against Google, in U.S. courts. Many relevant documents and witnesses are in the U.S., including most of Defendant's employees, as are Defendants' servers housing subscriber data. Pl.'s Mot. at 13.

The public interests similarly favor Plaintiff. Those interests include, first and foremost, the "sovereign's interests in deciding the dispute." *Otto Candies*, 963 F.3d at 1338. "[A] sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil." *Id.* at 1352 (quoting *SME Racks*, 382 F.3d at 1104). Plaintiff, a U.S. citizen, was harmed on home soil when his personal information was transmitted from his devices in the U.S. to U.S.-based Meta in violation of the VPPA. Indeed, Plaintiff's relevant data flowed strictly within the U.S. Pl.'s Mot. at 22. Defendant ignores this factor entirely.

Defendant fails to address the third prong of the analysis: whether Plaintiff could reinstate his case "without undue inconvenience or delay." *Otto Candies*, 963 F.3d at 1338. In any event, Plaintiff would face significant inconvenience and delay, at best, if forced to attempt to litigate in Canada. (*See* D-Ex. 20 ¶¶ 22-29.)

19

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.[18]

Dated: October 13, 2023                    Respectfully submitted,

/s/ *Christopher J. Cormier*

| | |
|---|---|
| Nicomedes Sy Herrera (#1029853)<br>Herrera Kennedy LLP<br>5072 Annunciation Circle, Suite 207<br>Ave Maria, FL 34142<br>Tel: (510) 422-4700<br>nherrera@herrerakennedy.com | Christopher J. Cormier (*pro hac vice*)<br>BURNS CHAREST LLP<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>Tel: (202) 577-3977<br>ccormier@burnscharest.com |
| Rachel Geman (*pro hac vice*)<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>250 Hudson Street, 8th Floor<br>New York, NY 10013-1413<br>Tel: (212) 355-9500<br>rgeman@lchb.com | Daniel H. Charest (*pro hac vice*)<br>Hannah M. Crowe (*pro hac vice*)<br>BURNS CHAREST LLP<br>900 Jackson Street, Suite 500<br>Tel: (469) 904-4550<br>dcharest@burnscharest.com<br>hcrowe@burnscharest.com |
| Michael K. Sheen (*pro hac vice*)<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Tel: (415) 956-1000<br>msheen@lchb.com | Shawn M. Kennedy (*pro hac vice*)<br>Bret D. Hembd (*pro hac vice*)<br>HERRERA KENNEDY LLP<br>4590 MacArthur Blvd., Suite 500<br>Newport Beach, CA 92660<br>Tel: (949) 936-0900<br>skennedy@herrerakennedy.com<br>bhembd@herrerakennedy.com |

*Attorneys for Plaintiff and the Proposed Class*

---

[18] If the Court grants Defendant's motion (it should not), any conditional dismissal order should apply to both jurisdiction and available remedies to avoid any unnecessary prejudice or inconvenience to Plaintiff. *Ford*, 319 F.3d at 1307.